Filed 7/11/16

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S224929 |
| v. | ) | |
| | ) | Ct.App. 6 H039219 |
| ZEFERINO ESPINOZA, JR., | ) | |
| | ) | Santa Clara County |
| Defendant and Appellant. | ) | Super. Ct. No. CC954850 |
| _____ | ) | |

The unusual circumstances of this case present a cautionary tale for defendants who choose to represent themselves, for in the end, this defendant has no one but himself to blame for any failure to present a defense.

Defendant here waged a long campaign of manipulation and delay of his trial proceedings after being held to answer on a number of felony and misdemeanor charges. He was represented by seven different appointed counsel over the course of more than two years, largely due to how difficult a client he was. Over the same period, five different deputy district attorneys were assigned to handle the case. The case was set for trial numerous times, but defendant made repeated requests for continuances. Indeed, defendant's case trailed for so long that there was concern over the continuing availability of witnesses.

When defendant's jury trial finally commenced, defendant moved, during jury selection, to dismiss his latest public defender and represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). In the course of providing

1

defendant with the appropriate *Faretta* warnings, the court indicated it did not find defendant had stated an appropriate ground for a one-day continuance in the event his *Faretta* motion were to be granted. Defendant continued to request self-representation and the trial court eventually granted that request. Defendant appeared as his own counsel for the completion of voir dire and the examination of the prosecution's first witness.

Defendant failed, however, to appear in court for the next day of trial. The court recessed for the entire day while efforts were made to locate defendant, who was out of custody.

When these efforts failed, the trial court found that defendant had voluntarily absented himself from the trial proceedings. Placed in a dilemma by defendant's disappearance, the court chose not to unilaterally revoke defendant's status as his own counsel, and accordingly, did not reappoint counsel to represent defendant. It proceeded with the trial in defendant's absence under the authority of Penal Code section 1043, subdivision (b)(2), which permits a trial court to continue with a noncapital felony trial in a defendant's absence if the trial was commenced in the defendant's presence and the defendant is "voluntarily absent."[1] The jury returned a mixed verdict, convicting defendant of a subset of the charges. Defendant subsequently appeared before the court and moved for a new trial. The trial court denied his motion and sentenced him to state prison.

---

[1] Specifically, Penal Code section 1043, subdivision (b)(2), provides that "[t]he absence of the defendant in a felony case after the trial has commenced in his presence shall not prevent continuing the trial to, and including, the return of the verdict in any of the following cases: [¶] . . . [¶] (2) Any prosecution for an offense which is not punishable by death in which the defendant is voluntarily absent." Hereafter we will refer to this statute as section 1043(b)(2).

2

On appeal, the Court of Appeal concluded the trial court committed structural error by proceeding with trial in the absence of defendant and without the reappointment of defense counsel. It also concluded reversal was required because, in the appellate court's view, the trial court had abused its discretion in denying defendant's motion for a one-day continuance after it had granted defendant's *Faretta* motion. We granted the People's petition for review.

We conclude that the trial court did not err, under the specific circumstances present in this case, in proceeding with the already-commenced trial after defendant had expressly waived his constitutional right to counsel and subsequently implicitly waived his constitutional right to be present. We also conclude that the trial court did not abuse its discretion in denying defendant's request for a one-day continuance, which the record reflects was made prior to the grant of his *Faretta* motion. Accordingly, we reverse the judgment of the Court of Appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 2009, defendant Zeferino Espinoza got into a verbal altercation with his roommate Augustine Gonzalez. During the argument, defendant purportedly threatened Gonzalez's life and told him not to call the police. Gonzalez called the police. When the police arrived, they obtained defendant's consent to search his room and upon doing so, located two firearms, ammunition, morphine, diazepam, and a small amount of marijuana. Defendant is a convicted felon.

Defendant was charged with a number of criminal violations relating to the incident and items found. The public defender was appointed to represent him. After being held to answer at a preliminary hearing, an information was filed in December 2009. It charged defendant with two felony counts of being a felon in possession of a firearm (Pen. Code, former § 12021, subd. (a)(1)); felony

3

possession of a controlled substance (morphine) (Health & Saf. Code, § 11350, subd. (a)); felony making of criminal threats (Pen. Code, § 422); misdemeanor possession of 28.5 grams or less of marijuana (Health & Saf. Code, § 11357, subd. (b)); felony possession of ammunition (Pen. Code, former § 12316, subd. (b)); felony dissuasion or attempted dissuasion of a witness (Pen. Code, § 136.1, subd. (c)(1)); and misdemeanor possession of a controlled substance without a prescription (diazepam) (Health & Saf. Code, § 11375, subd. (b)(2)).

As previously mentioned, seven different public defenders represented defendant over the course of the next 27 months. They made more than 60 court appearances on his behalf. During that period of time, a motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 was filed and denied, a motion to suppress was filed and denied, and two motions pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) were made and denied. The case was finally assigned to a trial department on April 16, 2012 and the trial court began to consider pretrial motions.

On April 17, 2012, defendant made another *Marsden* motion to relieve his then current public defender, Mark Camperi. Defendant requested that the court appoint a conflict of interest attorney or allow him to represent himself. (*Faretta*, *supra*, 422 U.S. 806.) The trial court asked defendant how much time he would need if he were to represent himself. Defendant indicated that he would need three weeks and he might then file some further motions. The trial court observed that the case had been trailing for an extraordinarily long time, that defendant could have requested to represent himself anytime in the previous few years, and that the trial was set to begin. It noted that defendant was not prepared to represent himself with a minimal continuance and stated that it was not inclined to continue the case for a further two to three weeks, which it suspected would be more likely at least another month. The court suggested that defendant was

4

asserting his rights under *Faretta* at that time because he was attempting to manipulate the court. The trial court denied defendant's *Faretta* motion.

As to defendant's *Marsden* motion defendant insisted that he wanted "to fire" Camperi. He stated he was "[n]ot going to trial with this attorney" because Camperi had a conflict of interest, failed to communicate with him, had no interest in the case, had threatened him, and had failed to investigate the witnesses defendant suggested. Camperi denied all of defendant's assertions. Camperi described his investigative efforts and attempts to discuss the case with defendant, who he claimed repeatedly interrupted and talked over him. The trial court found no basis to relieve Camperi and denied defendant's *Marsden* motion.

The next day, Camperi informed the trial court that defendant desired a two-week continuance in order to represent himself and that defendant was adamant that he wanted to fire Camperi. The court stated that its prior orders would remain in effect because the court did not believe it would be possible for the case to be ready in two weeks if defendant were to represent himself. The court observed that "there's been five D.A.'s assigned to go to jury trial. There have been seven public defenders. This case keeps rattling around the courthouse, for lack of a better word. And it's not for any lack of effort on the part of the D.A. or the public defender." The court proceeded to discuss various pretrial matters, including an estimated schedule for the jury trial. With respect to that schedule, the court stated it anticipated, at most, a two-week trial with jury selection set to begin on April 23, 2012.

On the day jury selection was set to begin, defendant again moved to relieve Camperi, reasserting a failure to communicate, a lack of interest in the case, and a failure to investigate witnesses. Defendant complained that his discovery packet was incomplete and asserted there was a "major conspiracy" "all the way from the police department to confidential witnesses" and that the asserted

5

conspiracy included Camperi. Defendant said that he had evidence of a romantic relationship between the investigating officer and the victim Gonzalez. Camperi responded and denied defendant's claims. The trial court found defendant's contentions baseless and contrary to the record. It stated that defendant's various requests appeared to be part of a delay tactic. The court questioned the credibility of defendant's additional assertion that he was in the process of retaining private counsel. And, at one point, it noted that defendant's case had been trailing for so long that one of the expected defense witnesses was dying of cancer and might not be able to testify if there were a continuance. Defendant continued to complain about Camperi. The trial court stated that defendant's complaints did not "line up with the evidence before the court, or in some cases reality." The court denied defendant's *Marsden* motion, suggesting that defendant would be unhappy with any public defender. It also denied his further *Faretta* motion, finding that it was brought for the purposes of delay. The trial court proceeded to consideration of several pretrial matters and then began jury selection.

The next morning, April 24, 2012, defendant again moved to dismiss Camperi under *Marsden* and to represent himself under *Faretta.* The court found that defendant, in stating the grounds for his request, was lying to justify his goal of getting rid of Camperi and failed to establish any basis for relieving counsel. It denied the *Marsden* motion.

Defendant once again asked if he could "go pro per." The trial court indicated that if defendant was ready to proceed to trial without counsel, he could do so. Defendant responded that he would "need co-counsel" and explained that it would take him two weeks to be ready for trial. The court denied the request for cocounsel and said the fact that defendant would need such a continuance if he were granted self-representation was the reason why he was not being permitted to represent himself. Moments later, the court told defendant that it would give him

6

a fair trial and reiterated that defendant could represent himself, but only if he was ready to proceed with the already commenced trial. The court told defendant that his "two options [were] you either represent yourself or you have Mr. Camperi represent you, because I can't continue this case." Defendant stated that he would like to represent himself, at which point the court asked that defendant be given a "*Faretta* form" because it wanted him to understand his rights before Camperi left.

Defendant was given the form and admonished by the court as follows: "Okay. Mr. Espinoza, I want to make it clear if you represent yourself you are not going to get any special treatment. You are not going to get any continuances unless they are reasonable requests, which given the time frame we've given to the jurors we need to move forward with this case. I'm not going to be extending it beyond that time limit I gave to the jurors. You need to get your own witnesses here without anybody's assistance. If you can't find them or locate them, if they don't agree to come in, if they're late because their bus didn't pick them up we're going without them. So I want to make sure you understand that. [¶] When you represent yourself you do it on your own. You don't get any assistance. You are not going to get co-counsel. You don't get any special favors. You are expected to be treated just as the D.A. is treated. You don't get any breaks because you don't know the law or how to proceed in a trial. You don't get to file an appeal saying that you had ineffective assistance of counsel because this is your choice." The court gave defendant some time to read over the *Faretta* form and reflect on his decision.

Approximately 40 minutes later, defendant indicated that he wanted to represent himself and had filled out the form "to the best of [his] ability." The court responded: "You either understood the form or you didn't. Don't say to the best of my ability. I don't play games." Defendant asked for additional time to review the form, which the court granted. Defendant asked the court whether, if

7

he proceeded to represent himself, it would grant him a continuance to the next day for him to get copies of whatever materials were in the possession of the public defender. The court told defendant "no," indicating that it believed defendant already had a copy of the file and that he was not entitled to any internal memoranda of the public defender's office detailing how difficult a client he was. Camperi assured the court that he would confirm that defendant had all of the discovery in the case and would immediately provide anything that had been missed. Defendant asked the court several additional questions regarding the *Faretta* form. Once the court answered them, defendant indicated he had read the form and fully understood it. The form described defendant's constitutional trial rights, including not only his right to be represented by a lawyer, but his right to confront witnesses and use the process of the court to subpoena witnesses and records needed for his defense. The court confirmed that defendant specifically understood that "you may not be able to change your mind, or if you do change your mind the court doesn't have to accept your change of mind[.] Mr. Camperi is not going to be coming back. You are not going to get co-counsel, side counsel, assisted counsel or any kind of counsel." The court asked defendant whether he was still willing to go to trial representing himself and defendant replied in the affirmative.

Noticing that defendant had failed to fully complete the *Faretta* form, the trial court went back to explain several matters. It also made a record of its observations of defendant, stating: "At times Mr. Espinoza has pretended to not know what's going on. And that he's unfamiliar with the case, but it's clear from his discussions with the court and counsel that he knows more about the case than anybody else. [¶] He's been working on this case since September 3, 2009. He has been controlling the direction of the case by having the public defender's office do many things which they thought in their professional legal opinions

8

[were] unnecessary, but they did them nevertheless. [¶] Defendant has been controlling the discovery associated with this case. The court believes that the defendant has been working the system as part of a delay tactic and/or his inability to accept reasonable tactical decisions of his various trial attorneys. And that he is not put into jeopardy by representing himself, because he is prepared to handle this case more so than his attorneys, according to Mr. Espinoza. And under the law even if he is not going to do as good a job as his attorney would have done, that is Mr. Espinoza's choice and he does so willingly." The court reviewed defendant's completed *Faretta* form and confirmed that defendant had personally filled it out and that he had no further questions. It then granted defendant's motion for self-representation.

Trial proceeded on April 24, 2012, with the completion of voir dire and the swearing of the jury. The prosecutor gave an opening statement. Defendant declined to give one. The prosecution called Gonzalez as its first witness. Defendant made two objections to the prosecutor's direct examination and declined cross-examination. At the conclusion of Gonzalez's testimony, the court dismissed the jury for the day and directed defendant to appear in court at 8:45 a.m. the next day.

Defendant failed to appear in court when the trial resumed the following morning. The court and prosecutor attempted, without success, to contact defendant. At 10:00 a.m., the court dismissed the jury until the next morning and ordered a body attachment for defendant.

On the following morning, April 26, 2012, the court reconvened outside the presence of the jurors, noting that defendant had still failed to appear and that no one had heard from him or located him despite a thorough search. The court made "a finding under Penal Code section 1043 that the defendant ha[d] voluntarily absented himself from this trial." It found that "he knowingly absented himself"

9

and "that he abandoned this trial purposefully and that the purpose for which he chose to not come to trial was evasion of the trial or avoiding penalty for the alleged crimes that he allegedly committed or another delay tactic with the defendant perhaps believing that if he didn't show up to trial that the court would terminate this jury trial, send the jurors home and then when he comes in in a month he would try to delay the trial again for another three years." The court explained its reasons for finding defendant knowingly and voluntarily absent, noting the conversations it had in defendant's presence about the schedule for the trial, the anticipated availability and timing for the testimony of witnesses, and defendant's obligation to be in court every day at 8:45 a.m. It observed that defendant had been given a copy of the rules of court informing him of the requirement that he be in court every day by 8:45 a.m. The court detailed the substantial efforts of court personnel and the prosecutor to locate defendant after he first failed to appear the previous morning.

The court informed the jury when it returned that the trial would be proceeding without defendant, as allowed by the law. The trial continued without defendant or defense counsel, although the court indicated for the record, outside the presence of the jury, that in conducting the proceedings it considered the arguments that likely would have been made by defendant or defense counsel if they had been present. At the conclusion of the trial, after two days of proceedings without defendant, the court instructed the jury that it should not consider defendant's absence during any portion of the trial "for any purpose in your deliberations." The prosecutor told the jury during closing argument to heed the court's instruction, which was then repeated before the jury began its deliberations. The court also expressly told the jury not to favor either defendant or the prosecution because of defendant's absence.

10

The jury returned a mixed verdict, finding defendant guilty of illegally possessing the charged drugs, firearms, and ammunition, but acquitting defendant of the offenses of making criminal threats and attempting to dissuade a witness through the threat of force. The court set sentencing for May 25, 2012. It directed the prosecutor to attempt to locate defendant and give him notice of the date set. If defendant was found, the court indicated that he should be remanded into custody.

Defendant was apparently not located and remanded into custody. Defendant simply voluntarily appeared in court on May 25, 2012, represented by retained counsel. The court granted defendant's request for a continuance of sentencing for eight weeks and remanded defendant into custody. The court ordered the probation department to interview defendant in jail. The case was subsequently continued again to allow time for retained counsel to file a motion for new trial. However, in October 2012, defendant dismissed his retained counsel and requested an alternate public defender. The trial court referred the matter to the alternate public defender for assessment. The alternate public defender accepted representation and moved for a further continuance of sentencing, which the trial court granted.

According to the presentence probation report, submitted in connection with defendant's prospective sentencing, defendant informed the probation officer that he "stopped attending the court proceedings because he was advised by an attorney to stop going so that there would be cause for a mistrial." Defendant said that he did not understand "how the proceedings continued without [him] being present in court and he would like this case to be considered a mistrial."

Defendant moved for a new trial, arguing that the court erred in denying his first and second *Faretta* motions, erred in granting his third *Faretta* motion without a continuance, erred in denying defendant's *Marsden* motions, and erred

11

in proceeding with the trial in defendant's absence. The trial court denied the motion, disagreeing with defendant's view of the facts and citing defendant's history of "delay tactics, unreasonable expectations, dishonest statements to the court, and manipulation of the process." The trial court sentenced defendant to prison for two years and eight months.

Defendant appealed. He argued, among other things, that the trial court erred by trying him in absentia without appointing counsel. He contended, after the reviewing court requested supplemental briefing on the matter, that the trial court erred by denying his motion for a one-day continuance.

The Court of Appeal reversed on both grounds, concluding that the trial court erred by proceeding with the trial in the absence of defendant and without defense counsel because defendant did not absent himself on the record and nothing in the record showed he knew or understood that the proceedings would continue without him. As a result, the appellate court found the record did not support any inference that defendant made a knowing waiver of his fundamental trial rights to confront witnesses against him, to present a defense, to present argument, and to assert his privilege against self-incrimination. The Court of Appeal suggested three measures that the trial court could have taken to avoid a mistrial in the event defendant failed to appear after his *Faretta* motion was granted: (1) it could have, after granting defendant the right to represent himself, appointed Camperi as standby counsel solely to observe the proceedings, (2) it could have later reappointed Camperi when defendant failed to appear, even if it had not appointed him earlier as standby counsel, or (3) it could have warned defendant during the *Faretta* warnings process that the trial would continue without him in the event he voluntarily absented himself, and that doing so would result in the waiver of his trial rights. The Court of Appeal also concluded

12

reversal was required because the trial court abused its discretion in denying a one-day continuance after it granted defendant's *Faretta* motion.

## II. DISCUSSION

### A. Proceeding with Trial in Absentia

"A criminal defendant's right to be present at trial is protected under both the federal and state Constitutions. (U.S. Const., 6th & 14th Amends.; *United States v. Gagnon* (1985) 470 U.S. 522, 526; Cal. Const., art. I, § 15; *People v. Waidla* [(2000)] 22 Cal.4th [690,] 741.)" (*People v. Gutierrez* (2003) 29 Cal.4th 1196, 1202 (*Gutierrez*).)

But the right is not an absolute one. (*Gutierrez*, *supra*, 29 Cal.4th at p. 1202.) It may be expressly or impliedly waived. (*People v. Concepcion* (2008) 45 Cal.4th 77, 82 (*Concepcion*).) As relevant here, the high court has stated that "where the offense is not capital and the accused is not in custody, *the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this* does not nullify what has been done or prevent the completion of the trial, but, on the contrary, *operates as a waiver of his right to be present and leaves the court free to proceed* with the trial in like manner and with like effect as if he were present." (*Diaz v. United States* (1912) 223 U.S. 442, 455, italics added.) Section 1043(b)(2) has adopted this majority rule as state law. (*Gutierrez*, at p. 1204.) Section 1043(b)(2) is similar to its federal counterpart, rule 43 of the Federal Rules of Criminal Procedure (18 U.S.C.), which, we note, the high court has found to be constitutional. (*Taylor v. United States* (1973) 414 U.S. 17, 18 (*Taylor*); *Gutierrez,* at p. 1204.) "In determining whether a defendant is absent voluntarily, a court must look at the 'totality of the facts.' " (*Gutierrez*, at p. 1205.) The trial court here found that defendant voluntarily failed to appear

13

for trial and using the authority of section 1043(b)(2) it proceeded with the already commenced trial.

*People v. Parento* (1991) 235 Cal.App.3d 1378 (*Parento*) considered a trial court's decision to proceed with trial in absentia under circumstances quite similar to those before us. After electing to represent himself, defendant Parento sought a continuance on the day of trial, which request was denied. He then requested appointment of counsel, which request was also denied. He then told the court: " 'Just do it without me then. That's what you do. . . . You just write me a letter when it's over. That's what you do.' " (*Id.* at p. 1380, fn. 2.) Parento "refused to participate further in the proceedings, and thus was absent from the trial." (*Id.* at p. 1380.) The Court of Appeal held that the trial court did not err in proceeding with trial in Parento's absence. It found Parento had voluntarily waived his right to be present at trial as well as his right to counsel. In effect, he had chosen to present no defense by physically absenting himself. (*Id.* at p. 1381.)

The Court of Appeal in the present case distinguished *Parento*, however, on the basis that the defendant there had affirmatively absented himself on the record with the knowledge that the trial was proceeding without him. It found nothing in the record here showed that defendant knew the proceedings would continue without him. It pointed out the trial court's comment that defendant may have believed "that if he didn't show up to trial that the court would terminate this jury trial" and defendant's later statement to his probation officer that he had indeed intended to cause a mistrial. Under these circumstances, the Court of Appeal reasoned, defendant "could not have known he was waiving his fundamental trial rights — including his right to confront the prosecution's witnesses, his right to present a defense, and his right to present argument."

With respect to this reasoning, our high court's decision in *Taylor*, *supra*, 414 U.S. 17 is instructive. In *Taylor*, the defendant, represented by counsel, was

14

present for the morning of the first day of his trial, but thereafter failed to appear. The trial court denied a motion for mistrial and proceeded with the trial to a verdict in reliance on rule 43 of the Federal Rules of Criminal Procedure (18 U.S.C.).[2] The high court affirmed, expressly rejecting the argument, echoed in the Court of Appeal's reasoning in this case, that a defendant's voluntary absence from trial is not an effective waiver of the right to be present at trial unless it is demonstrated on the record that the defendant "knew or had been expressly warned by the trial court not only that he had a right to be present but also that the trial would continue in his absence and thereby effectively foreclose his right to testify and to confront personally the witnesses against him." (*Taylor*, at p. 19.) The high court approved Judge Fahy's statement in *Cureton v. United States* (D.C. Cir. 1968) 396 F.2d 671, 676, of "the controlling rule" that " '[i]f a defendant at liberty remains away during his trial the court may proceed provided it is clearly established that his absence is voluntary. He must be aware of the processes taking place, of his right and of his obligation to be present, and he must have no sound reason for remaining away.' " (*Taylor*, at p. 19, fn. 3; see *People v. Connolly* (1973) 36 Cal.App.3d 379, 384.) Under such circumstances, the high court stated that " 'there can be no doubt whatever that the government prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward.' " (*Taylor*, at p. 20.)

---

[2] Because the defendant in *Taylor* continued to be represented by defense counsel after he failed to appear, we recognize that *Taylor* is distinguishable from this case. Here, defendant knowingly and voluntarily waived his right to counsel pursuant to *Faretta*. Defense counsel was relieved and defendant proceeded to represent himself at the first portion of his trial. He then absconded midtrial.

15

The trial court in this case determined that defendant knew his trial had commenced, that it was scheduled to continue the next day, and that he had both a right and an obligation to be present in court in the morning for the trial to proceed. In support, it expressly noted the conversations it had in defendant's presence about the schedule for the trial, the anticipated availability and timing for the testimony of witnesses, and defendant's obligation to be in court every day at 8:45 a.m. It observed that defendant had been given a copy of the rules of court informing him of the requirement that he be in court every day by 8:45 a.m. The trial court also found that defendant's purpose in failing to appear was delay, evasion of the trial, and avoidance of punishment. Thus, the court made the necessary factual findings for an effective waiver of defendant's right to be present at trial.

The role of an appellate court in reviewing a finding of voluntary absence is a limited one. Review is restricted to determining whether the finding is supported by substantial evidence. (*Concepcion*, *supra*, 45 Cal.4th at p. 84.) Here the record, which we have described, supports the trial court's view that defendant was " 'aware of the processes taking place,' " that he knew " 'his right and of his obligation to be present,' " and that he had " 'no sound reason for remaining away.' " (*Taylor*, *supra*, 414 U.S. at p. 19, fn. 3.) As such, defendant implicitly waived his right to be present. (*Id.* at p. 20.) No more was constitutionally required. (*Smith v. Mann* (2d Cir. 1999) 173 F.3d 73, 76; *Clark v. Scott* (5th Cir. 1995) 70 F.3d 386, 389-390.)

But in fact the record here demonstrates more. Defendant was present and represented himself during the selection and empaneling of the jury. He was present and represented himself when opening arguments were given. He declined to present a defense opening statement. He was present and represented himself during the examination of the prosecution's first witness, the alleged victim of two

16

of defendant's charged offenses. Defendant raised two objections during direct examination and declined cross-examination. Under these circumstances, it is "wholly incredible" that defendant "entertained any doubts about his right to be present at every stage of his trial." (*Taylor*, *supra*, 414 U.S. at p. 20.) Equally clear, defendant had to have been aware of his trial rights of confrontation and presentation of a defense and argument. The only uncertainty here is whether he was also actually aware that the trial could continue if he chose to absent himself.[3]

Defendant's actual knowledge is, however, immaterial. By invoking his *Faretta* right, defendant gave up the right to argue that "the quality of his own defense amounted to a denial of 'effective assistance of counsel.' " (*Faretta*, *supra*, 422 U.S. at p. 834, fn. 46.) When defendant voluntarily chose self-representation, he became charged with the knowledge of the authority of the trial court to continue with his trial if he voluntarily chose not to appear, pursuant to section 1043(b)(2) and *Parento*, *supra*, 235 Cal.App.3d at pages 1381-1382. A

---

[3] The trial court stated that "the purpose for which [defendant] chose not to come to trial was evasion of the trial *or* avoiding penalty for the alleged crimes that he allegedly committed *or* another delay tactic with defendant *perhaps* believing that if he didn't show up to trial that the court would terminate this jury trial, send the jurors home and then when he comes in in a month he would try to delay the trial again for another three years." (Italics added.) But with respect to the latter possibility, we note the record also reflects defendant repeatedly lied to support his own aims. Thus, defendant could have lied to the probation officer about his belief that a mistrial would be declared if he failed to appear in order to support his contemplated motion for a new trial, in line with the trial court's previous speculation. And, from the perspective of the trial court at the time of defendant's failure to appear, it was also reasonable to believe defendant had chosen to abandon his trial as a tactical decision to present no defense. After all, defendant had made minimal efforts at a substantive defense up to the point in time when he absented himself. As we explain, the trial court did not need to resolve this factual question under the circumstances.

defendant cannot choose to represent himself, decide upon an ill-advised strategy that results in his inability to present a defense or to cross-examine witnesses, and then plead ignorance of the law or the consequences of his actions as a ground for reversal of his conviction. (Cf. *People v. Blair* (2005) 36 Cal.4th 686, 734 [a self-represented defendant "cannot premise a claim of ineffective assistance of counsel on his own shortcomings"]; *U.S. v. Flewitt* (9th Cir. 1989) 874 F.2d 669, 674 ["[A] defendant cannot claim 'ineffective assistance of counsel' flowing from his failure to follow the rules of procedure or from his misinterpretation of the substantive law. If he chooses to defend himself, he must be content with the quality of that defense."].)

Of course, our conclusion that defendant's voluntary absence operated to waive his constitutional right to be present at trial and permitted continuation of the trial, does not end our inquiry regarding the propriety of the trial court's decision to proceed with the trial in the absence of defendant and defense counsel. Section 1043(b)(2) states that a defendant's voluntary absence "shall not prevent" the trial from continuing, but it does not require it. Accordingly, the decision whether to continue with a trial in absentia under the statute or to declare a mistrial rests within the discretion of the trial court. (Cf. *Cureton v. United States*, *supra*, 396 F.2d at p. 675 [similar language in federal rule provides courts with latitude in deciding whether to proceed].) We conclude that defendant has failed to show any abuse of discretion by the trial court here.

What the trial court knew at the time defendant failed to appear for trial was that defendant had vigorously and repetitively contended that he did not want to proceed to trial with Camperi as his counsel. He distrusted Camperi, who he claimed failed to communicate with him, lacked interest in his case, and was part of the "conspiracy" against him. The court had questioned defendant to make sure that he specifically understood that if he chose to represent himself, he would not

18

"get co-counsel, side counsel, assisted counsel or any kind of counsel." And defendant had expressed his willingness and desire to represent himself under such conditions. Defendant had been provided with the appropriate *Faretta* warnings and had knowingly and voluntarily waived his right to counsel and undertaken to represent himself. A jury was empaneled and the evidentiary portion of the trial was begun. Of course, the trial court was also aware that defendant participated only minimally in those trial proceedings; declining both the opportunity for opening statement and examination of the prosecution's first witness. Defendant then disappeared without notice or explanation.

Given defendant's minimal efforts in offering a substantive defense when he was acting pro se and up to the point in time when he absented himself, defendant's failure to appear for the next day of trial, as a circumstance by itself, did not constitute a clear abandonment of his constitutional right of self-representation. As the Eleventh Circuit Court of Appeals stated, even under circumstances where the defendant had actively advocated his defense, "[w]ith no other clues, his flight alone does not indicate unambiguously a desire to revoke his valid Sixth Amendment waiver and reinstate [prior counsel] as counsel of record." (*U.S. v. Stanley* (11th Cir. 2014) 739 F.3d 633, 650.)

Defendant's failure to appear, thus, placed the trial court in a difficult dilemma. The Court of Appeal's first suggested alternative was for the trial court to appoint Camperi as standby counsel when it granted defendant's *Faretta* motion. But, given defendant's expressed antipathy to Camperi, the trial court reasonably could have concluded that doing so would likely incense defendant and result in his further efforts to delay or avoid continuing with the trial. And although a trial court may properly revoke a defendant's *Faretta* waiver when the

19

defendant engages in "serious and obstructionist misconduct," (*Faretta, supra,* 422 U.S. at p. 834, fn. 6; accord, *People v. Clark* (1992) 3 Cal.4th 41, 113-116),[4] the trial court here faced significant countervailing considerations when defendant disappeared.  Defendant had a long history of lack of cooperation and dissatisfaction with appointed counsel, had adamantly objected to Camperi, had executed a valid *Faretta* waiver when faced with continued representation by appointed counsel, and had provided virtually no substantive defense prior to his disappearance.  Under these circumstances, we see no basis for concluding the trial court was *required* to revoke defendant's self-representation rights and reappoint Camperi (or any other counsel, had one been available and ready to proceed on behalf of defendant), as suggested by the Court of Appeal as a second alternative.[5]  As the high court explained in *Faretta* itself, "[t]o thrust counsel upon the accused, against his considered wish, . . . violates the logic of the [Sixth] Amendment." (*Faretta*, *supra*, 422 U.S. at p. 820.)  "An unwanted counsel

---

[4]     "[T]he right of self-representation is not absolute." (*Indiana v. Edwards* (2008) 554 U.S. 164, 171.)  A trial judge may terminate self-representation" [w]henever 'deliberate dilatory or obstructive behavior' threatens to subvert 'the core concept of a trial' [citation] or to compromise the court's ability to conduct a fair trial [citation]." (*People v. Carson* (2005) 35 Cal.4th 1, 10.)  "Each case must be evaluated in its own context, on its own facts, in light of" relevant factors. (*Ibid*.)  But, contrary to defendant's argument, the record does not reflect that the trial court here implicitly revoked defendant's pro se status on such ground.  (See *post*, pp. 23-24.)  We have no occasion, therefore, to decide whether the trial court could have done so under the circumstances of this case. (Cf. *U.S. v. Stanley, supra*, 739 F.3d at p. 650.)

[5]     As we have discussed, and contrary to the third suggestion of the Court of Appeal, the trial court had no responsibility to anticipate defendant's subsequent absence and expressly warn defendant at the time of considering his *Faretta* motion that if he failed to appear, his trial would continue in his absence, thereby effectively foreclosing his trial rights. (See *Taylor*, *supra*, 414 U.S. at p. 19.)

'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense." (*Id.* at p. 821.) "[T]he core of the *Faretta* right" is that "the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 178.) That right of control includes "the option of conducting his defense by nonparticipation." (*People v. McKenzie* (1983) 34 Cal.3d 616, 628.)

Moreover, the trial court reasonably found that defendant's failure to appear was a continuation of his efforts to manipulate the court and delay his criminal trial. Defendant had worked his way through seven defense counsel over the course of nearly two and a half years before, at the last moment, deciding to proceed pro se and then, the next day, failing to appear. The court was not required to reward defendant's voluntary choice to absent himself by granting a mistrial. (See *People v. Brownlee* (1977) 74 Cal.App.3d 921, 932 ["We are aware of no principle of law, constitutional or otherwise, which entitles a defendant to a mistrial for his own misconduct."].) As well stated more than a century ago, " '[i]t does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced. The practical result of such a proposition, if allowed to be law, would be to prevent any trial whatever until the accused person himself should be pleased to permit it.' " (*Diaz v. United States*, *supra*, 223 U.S. at p. 457, quoting *Falk v. United States* (1899) 15 App. D.C. 446, 454; accord, *Concepcion*, *supra*, 45 Cal.4th at p. 82.)

In deciding whether to proceed with the trial, the trial court was also entitled to consider the stage of the trial proceedings. (*Concepcion*, *supra*, 45

Cal.4th at p. 83; see *U.S. v. Wallingford* (8th Cir. 1996) 82 F.3d 278, 280.) Specifically, a jury had already been selected and sworn. It was empaneled with the understanding that trial was anticipated to last at most two weeks. The trial had begun and the prosecution's first witness had testified. The prosecution was ready to proceed when defendant disappeared. (*Concepcion*, *supra*, at pp. 83-84 [detailing the possible disruptions entailed by trial delay].) The trial court did not rush to proceed with trial, but recessed for a day while multiple attempts were made to locate defendant. (See *Gutierrez*, *supra*, 29 Cal.4th at p. 1209 [recognizing that the trial court did not " 'summarily plung[e] ahead' with trial," but "took reasonable steps to determine that defendant was 'voluntarily absent' before continuing with trial in his absence"].) Delaying the trial further would have posed a risk of hardship to the jurors, inconvenience to the witnesses, and disruption to orderly court processes. To declare a mistrial and reconvene a new jury, moreover, would have been a waste of judicial resources with no certainty of a different result, given defendant's history of delay tactics.

It is important, of course, to also recognize that courts have an "independent interest" in ensuring that criminal trials are fair and accurate. (*Wheat v. United States* (1988) 486 U.S. 153, 160.) That interest is clearly implicated when continuing an ongoing trial in a defendant's absence will result in an empty defense table. (See *Thomas v. Carroll* (3d Cir. 2009) 581 F.3d 118, 126.) But it appears that the trial court here appropriately considered this issue. Faced with defendant's voluntary absence after he had strongly asserted and obtained the right to proceed with his own defense and without counsel, the court informed the jury when it returned that the trial would be proceeding without defendant as permitted by the law. At the conclusion of the trial, the court instructed the jury that it should not consider defendant's absence during any portion of the trial "for any purpose in your deliberations." The court expressly

22

told the jury not to favor either defendant or the prosecution because of defendant's absence. Not only do we presume the jury followed the court's instructions, we note that the jury returned a mixed verdict in the case.

Viewing these circumstances as a whole, we conclude the trial court acted within its discretion in deciding to proceed with the trial pursuant to section 1043(b)(2).

Not actually contesting these conclusions, defendant now makes a new claim asserted for the first time before this court. He argues that the trial court implicitly revoked his pro se status for misconduct, that is, based on his failure to appear for trial constituting a form of deliberate misconduct. (E.g., *People v. Carson*, *supra*, 35 Cal.4th at p. 6; *People v. Clark* (1992) 3 Cal.4th 41, 115-116, citing *Faretta*, *supra*, 422 U.S. at p. 835, fn. 46). Defendant then claims that once the court implicitly terminated his self-representation, it erred by failing to reappoint counsel (*People v. Soukomlane* (2008) 162 Cal.App.4th 214, 234-235; *People v. Carroll* (1983) 140 Cal.App.3d 135, 141-143) and by, instead, "undertaking [defendant's] representation itself." Further, defendant asserts that he was mentally ill and did not meet the standard of competence for self-representation set by *People v. Johnson* (2010) 53 Cal.4th 519, 530 (*Johnson*). Consequently, he argues, the trial court erred by failing to conduct an inquiry into his ability to represent himself, by granting his request for self-representation, and by failing to reappoint counsel after it implicitly terminated his pro se status.

By failing to raise these claims in his new trial motion and on appeal, defendant forfeited them. Indeed, they appear to be inconsistent with both the legal and factual positions defendant advanced below. The claims are also not properly before us because defendant failed to request that they be included in our review in his answer to the People's petition for review. Moreover, they are unsupported by the record and are, therefore, meritless.

23

That is, regardless of whether a voluntary failure to appear *may* provide sufficient cause for a trial court to terminate a defendant's pro se status (*ante*, fn. 5), the record is clear that the trial court did not do so here, implicitly or otherwise. The comments made by the trial court to which defendant refers in support of his claim that the court "constructively" revoked his right of self-representation, when read in context, simply reflect that the court sought to protect defendant's right to a fair trial by conducting the trial proceedings in a manner consistent with the prior requests of Camperi when he still represented defendant and in light of the likely positions and argument that would be made by effective defense counsel. Other comments essentially indicate the trial court's internal deliberative process in ruling on evidentiary and instructional issues. We view the court's comment that it "basically sat in defense counsel's seat" as purely a figurative means of expressing its position that it had conducted the trial in a manner that protected defendant's right to a fair trial. Thus, the underlying factual premise of defendant's argument lacks support in the record.

Nor does the record support defendant's new position that the court erred under our law permitting the denial of self-representation for defendants who are severely mentally ill. (*Johnson*, *supra*, 53 Cal.4th at p. 530 [self-representation may be denied a defendant who "suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel."].) "A trial court need not routinely inquire into the mental competence of a defendant seeking self-representation. It needs to do so only if it is considering denying self-representation due to doubts about the defendant's mental competence." (*Ibid.*) There is no indication the trial court had such doubts here. To the contrary, the trial court observed for the record that: "At times Mr. Espinoza has pretended to not know what's going on. And that he's unfamiliar with the case, but it's clear from his discussions with the court and

24

counsel that he knows more about the case than anybody else.  [¶]  He's been controlling the direction of the case[.]  [¶]  He has been controlling the discovery associated with this case."  Elsewhere, the trial court told defendant that neither the court nor counsel believed him to be either mentally ill or incompetent.

### B.  Denial of Defendant's Request for a One-day Continuance

As an additional ground for reversal of the judgment, the Court of Appeal held that after granting defendant's *Faretta* motion, the trial court abused its discretion by denying defendant's motion for a one-day continuance.  Because we read the record differently from the Court of Appeal, we disagree.

"Although a necessary continuance must be granted if a motion for self-representation is granted, it is also established that a midtrial *Faretta* motion may be denied on the ground that delay or a continuance would be required."  (*People v. Clark*, *supra*, 3 Cal.4th at p. 110.)  A trial court may also condition the grant of an untimely *Faretta* motion on a defendant's ability to immediately proceed to trial.  (*People v. Valdez* (2004) 32 Cal.4th 73, 103.)

The record reflects that defendant's case was assigned to a trial department on April 16, 2012.  On April 17, defendant belatedly moved to represent himself under *Faretta*.  The trial court denied defendant's motion on the ground that a continuance of at least several weeks would be required.  The court explained to defendant the following day that his *Faretta* motion was denied because he was not prepared to proceed with the trial in a timely manner.  On April 23, defendant's *Marsden* motion was denied as baseless and his renewed *Faretta* motion as a delay tactic.  Jury selection began.

As detailed earlier, when defendant again renewed his *Faretta* motion on April 24, he once more indicated he would require two weeks to be ready for trial. The trial court was still not prepared to continue the matter that long, but stated

that defendant could proceed pro se if he was ready to continue with the already commenced trial. When defendant responded that he was interested in representing himself, the court provided defendant with a *Faretta* form and explained defendant's constitutional rights. The court also admonished defendant that if he chose to represent himself, he was "not going to get any continuances *unless they are reasonable requests,* which given the time frame we've given to the jurors we need to move forward with this case. *I'm not going to be extending it beyond that time limit I gave to the jurors.*" (Italics added.) In other words, the trial court told defendant that it would condition the grant of his *Faretta* motion on defendant's ability to proceed with trial with only reasonable continuances that would not extend the trial beyond the two-week estimate given to the jury. The court gave defendant some time to read over the *Faretta* form and reflect on his decision. Approximately 40 minutes later, defendant and the court engaged in another colloquy regarding the form and defendant asked the court whether, if he proceeded to represent himself, it would grant him a continuance to the next day in order for him to get copies of materials in the possession of the public defender. The court told defendant "no," indicating that it believed defendant already had a copy of the file and that he was not entitled to any internal memoranda of the public defender's office detailing how difficult a client he was. Defendant asked the court several additional questions regarding the *Faretta* form. Once the court answered them, defendant indicated he had read the entire form and understood it. Noticing that defendant had still failed to fully complete the form, the trial court went back to explain several additional matters. Only when it was satisfied that defendant understood his rights and the consequences of his choice did the court actually grant defendant's motion for self-representation.

Thus, the record shows the trial court did not grant defendant's *Faretta* motion and then subsequently deny defendant's motion for a one-day continuance.

26

It instead acted within its discretion to condition the grant of defendant's *Faretta* motion on his ability to immediately proceed to trial unless he had a reasonable basis for a short continuance. When defendant suggested that if he were granted leave to represent himself, he would need a one-day continuance in order to obtain materials from the public defender's office, the court indicated it would not grant such a continuance because it did not believe defendant's claim that he did not have all of the materials to which he was entitled. The record provides no basis for us to question that determination and we find no error in this respect.

### III. CONCLUSION

The judgment of the Court of Appeal is reversed. Because the Court of Appeal did not reach defendant's other appellate claims of sentencing error, we remand the matter to the Court of Appeal for further proceedings consistent with this opinion.

CANTIL-SAKAUYE, C. J.

WE CONCUR:

WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.
KRUGER, J.

28

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Espinoza

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 233 Cal.App.4th 914
**Rehearing Granted**

_____

**Opinion No.** S224929
**Date Filed:** July 11, 2016

_____

**Court:** Superior
**County:** Santa Clara
**Judge:** Paul Bernal

_____

**Counsel:**

Lawrence A. Gibbs, under appointment by the Supreme Court, and E. Michael Linscheild, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Gerald A. Engler, Chief Assistant Attorneys General, Jeffrey M. Laurence, Acting Assistant Attorney General, Eric D. Share, Luke Fadem, Laurence K. Sullivan, René A. Chacón and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Lawrence A. Gibbs
P.O. Box 7639
Berkeley, CA  94707
(510) 525-6847

Bruce Ortega
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-1335