Filed 6/12/26  P. v. Solano CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GABRIELA MARTHA SOLANO,<br><br>    Defendant and Appellant. | B341498<br><br>(Los Angeles County Super. Ct. No. KA042134) |

APPEAL from an order of the Superior Court of Los Angeles County, Jacqueline Lewis, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland and Susan Sullivan Pithey, Assistant Attorneys General, Zee Rodriguez and Lauren Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Gabriela Solano appeals the trial court's denial of relief under Penal Code[1] section 1172.6 after an evidentiary hearing. She argues that insufficient evidence supports the trial court's findings that she was a major participant who acted with reckless indifference to human life. She also contends the court erred in admitting testimony from her parole board hearing and in holding the evidentiary hearing in her absence. We affirm.

## FACTS AND PROCEDURAL HISTORY

1.    **The underlying crimes[2]**

On a Tuesday night in late September 1998, appellant and four others—her boyfriend (Armando Perez), her roommate (Brenda Moreno), and two of her boyfriend's friends (Dennis Barroso and Brian Scott)—drove around the San Gabriel Valley committing a rash of violent crimes.

Appellant was the driver, and was behind the wheel of her own SUV.

Before starting the crime spree, appellant drove the others to a store to buy black gloves and then made two further stops to pick up shotguns and handguns.

The group started with a carjacking in Diamond Bar. Around 10:15 p.m., appellant followed a woman in an Infiniti until appellant's boyfriend and his two friends hopped out and, with guns on display, forced the driver out of her car. They demanded her purse, watch, and necklace, and drove off in her car.

---

[1] Undesignated statutory references are to the Penal Code.

[2] We draw these facts from our prior opinion affirming appellant's convictions. (*People v. Barroso et al.* (Apr. 24, 2001, B135322) [nonpub. opn.].)

2

Then the group attempted a second carjacking in Rosemead. Appellant followed the intended victim into his driveway. When appellant's boyfriend and Barroso jumped out of the SUV and pointed their guns at the driver of the other car, he honked his horn and put his car in reverse. Appellant maneuvered her SUV to block his escape, but he managed to drive away—but not before Barroso shot at the car (and missed).

The group capped off their spree with a robbery and murder. Around 2:00 a.m., appellant drove up next to several pedestrians returning from a convenience store—Gilbert Rivas, Rivas's fiancée, Rivas's teenage brother, and the fiancée's teenage son. Appellant's boyfriend proclaimed his allegiance to the "Valinda Flats" gang. He, his friends, and appellant's roommate then jumped out of the SUV with their firearms. Rivas's brother handed them cash, cigarettes, and his new black Nikes. Appellant's roommate asked the fiancée to hand over her rings. When the fiancée explained that the rings had little monetary value but great sentimental value, appellant's roommate punched her in the face. Rivas told the roommate that she did not need to hurt his fiancée or disrespect them. That is when Barroso shot Rivas in the stomach, and appellant's boyfriend shot him twice more in the back and head. Rivas died from the gunshot wounds.

2. **Prosecution, conviction, and appeal**

The People charged appellant with (1) the murder of Rivas (§ 187, subd. (a)), (2) the second degree robbery of Rivas's brother (§ 211), (3–5) the attempted robberies of Rivas, Rivas's fiancée, and the fiancée's son (§§ 211, 644), (6) the carjacking of the Infiniti driver (§ 215, subd. (a)), and (7) the second degree robbery of the Infiniti driver (§ 211). As to the murder, the People alleged the special circumstance that the "murder . . . was committed . . .

3

while the defendant[s] . . . were engaged in the commission of the crime[s] of robbery and attempted robbery" (§ 190.2, subd. (a)(17)). As to the counts involving Rivas and his group, the People further alleged that a principal used and discharged a firearm resulting in great bodily injury or death (§§ 12022.5, subd. (a), 12022.53, subds. (d) & (e)(1)), and that the crimes were "committed for the benefit of, at the direction of, and in association with a criminal street gang" (§ 186.22, subd. (b)(1)).

The matter proceeded to a jury trial. The jury was instructed that they could convict defendant of Rivas's murder as a direct aider and abettor or on a felony-murder theory. With respect to the special circumstance allegation, the jury was instructed that the allegation could be found true only if the jury found, beyond a reasonable doubt, that (1) appellant was the "actual killer," (2) appellant "aided, abetted, or assisted . . . in the commission of the murder in the first degree" "with the intent to kill," or (3) appellant "aided, abetted, or assisted" the "commission or attempted commission of the crime of robbery" "as a major participant" and "with reckless indifference to human life." In closing arguments, the prosecutor argued that appellant was liable for murder under the felony-murder theory, and that the special circumstance was true because she was a major participant in the robberies and attempted robberies who acted with reckless indifference to human life.

The jury found appellant guilty of all charges and found true the special circumstance, the firearm allegations, and the gang allegation. The trial court sentenced appellant to life without the possibility of parole plus 42 years 4 months.

Appellant appealed, and we affirmed her convictions and sentence. (*People v. Barroso et al.*, *supra*, B135322.) In 2018, the

4

Governor commuted appellant's sentence to 20 years to life. (*People v. Solano* (June 10, 2021, B303993).)

3. **Petition for resentencing, summary denial, and remand for evidentiary hearing in view of *Strong*[3]**

On March 13, 2019, appellant filed a petition seeking resentencing under section 1172.6 for her murder conviction, which the trial court summarily denied. We affirmed because the true finding on the robbery-murder special circumstance rendered appellant ineligible for relief as a matter of law. (*People v. Solano*, *supra*, B303993.) Upon review, the California Supreme Court transferred this case back to us to reconsider in light of *Strong*, and we remanded the matter for the trial court to conduct an evidentiary hearing.

The trial court then appointed counsel for appellant and entertained briefing. After an evidentiary hearing, the court denied appellant's petition for resentencing, concluding that she was a major participant who acted with reckless indifference to human life.

**DISCUSSION**

1. **Provisions of section 1172.6**

In 2018, our Legislature amended the definition of "murder" in our state to preclude a jury from "imput[ing]" the "malice" element of that crime "based solely on [a defendant's] participation in a crime." (§ 188, subd. (a)(3).) Our Legislature's purpose was to ensure that "[a] person's culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 2(g).) As amended, liability for murder is limited to persons (1) who are the actual killer; (2) who aided and abetted the actual killer in the murder; or (3) as

---

[3] *People v. Strong* (2022) 13 Cal.5th 698.

5

relevant here, who were a major participant in the underlying felony that resulted in the killing and acted with reckless indifference to human life.  (§§ 188, subd. (a)(3), 189, subd. (e).)

Section 1172.6 is the procedural vehicle by which defendants can seek to vacate convictions that do not satisfy the now current definition of "murder."  Where a defendant files a facially sufficient petition and the record does not foreclose relief as a matter of law, the trial court must issue an order to show cause and convene an evidentiary hearing.  (§ 1172.6, subd. (c).)  At the hearing, the People have the burden of proving to the trial court that a defendant is guilty of murder on a still-valid theory.  (§ 1172.6, subd. (d)(3).)

We review the trial court's findings for substantial evidence.  (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1066.)  In undertaking this review, our task is a narrow one.  We may only ask whether the record contains "substantial evidence—evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Hubbard* (2016) 63 Cal.4th 378, 392.)  We may not reweigh the evidence (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890); if the trier of fact's resolution of any conflict in the evidence is "reasonable," we cannot reverse just because the trier of fact could have reasonably resolved the conflict the other way (*Hubbard*, at p. 392).

2.     **Substantial evidence supports the trial court's findings**

Our task is to assess whether substantial evidence supports the trial court's findings that appellant was a major participant in the underlying felony and acted with reckless indifference to human life, as those elements were narrowed under *People v.*

6

*Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

### A. Major participant

Under *Banks* and *Clark*, a "major participant" in a burglary or attempted robbery is someone whose "personal involvement" is "substantial"; such a participant "need not be the ringleader" (*People v. Williams* (2015) 61 Cal.4th 1244, 1281), but her involvement must be "greater than the actions of an ordinary aider and abettor" (*Banks*, *supra*, 61 Cal.4th at pp. 801–802). Courts are to examine the totality of the circumstances when evaluating the extent of participation, including several factors identified in *Banks* as relevant but not dispositive on the issue: (1) the defendant's role in planning the robbery; (2) her role in supplying or using lethal weapons; (3) her awareness of the "particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants"; (4) her presence at the scene of the killing and thus whether she was "in a position to facilitate or prevent the actual murder"; and (5) her actions after the use of lethal force. (*Banks*, at p. 803; *Clark*, *supra*, 63 Cal.4th at p. 611.)

Substantial evidence supports the finding that appellant was a major participant. First, the evidence shows appellant played a significant role in the planning of the crime spree that included the deadly robbery. Appellant's boyfriend called appellant, who was living with Moreno, to come up with a plan to "make some money." While appellant was on the phone, she recruited her roommate to join in the crime spree. The women then got into appellant's SUV and drove to pick up appellant's boyfriend and his two friends. Appellant drove the men to purchase black gloves.

7

Second, appellant played a major role in obtaining the weapons used. After stopping to buy gloves, she drove to two different homes to pick up guns.

Third, appellant was aware of the particular dangers posed by the nature of the crime, weapons used, and the participants. Appellant first drove to Diamond Bar, where her boyfriend and Barroso robbed a woman at gunpoint and stole her car. Barroso stated his intent to shoot the woman, but appellant and her roommate dissuaded him. During an attempt to steal a different car, appellant was present when Barroso shot at the victim's car as he drove off. Appellant was thus aware not only that her confederates were armed but also that at least one of them was inclined to shoot.

Fourth, appellant was at the scene of the killing and did nothing to stop her boyfriend and Barroso from shooting Rivas.

Fifth and finally, appellant fled the scene without rendering any aid to Rivas.

### B. *Reckless indifference*

Under *Banks* and *Clark*, a defendant acts with reckless indifference to human life when he " ' "knowingly engag[es] in criminal activities known to carry a grave risk of death." ' " (*Banks*, *supra*, 61 Cal.4th at p. 801.) This standard "has a subjective and an objective" component. (*In re Scoggins* (2020) 9 Cal.5th 667, 677.) To satisfy the subjective component, " '[t]he defendant must be aware of and willingly involved in the violent manner in which the [underlying felony] is committed,' and . . . must consciously disregard 'the significant risk of death his or her actions create.' " (*Scoggins*, at p. 677, quoting *Banks*, *supra*, 61 Cal.4th at p. 801; see *Clark*, *supra*, 63 Cal.4th at p. 617.)

8

Our Supreme Court has identified a number of considerations bearing on whether a defendant has acted with reckless indifference to human life. "No one of these considerations is necessary, nor is any one of them necessarily sufficient" (*Banks*, *supra*, 61 Cal.4th at p. 803); what matters is the totality of the considerations (*Scoggins*, *supra*, 9 Cal.5th at p. 677). The considerations are: (1) "Did the defendant use or know that a gun would be used during the [underlying] felony," and, relatedly, "[h]ow many weapons were ultimately used?"; (2) "Was the defendant physically present at the crime," such that she had "the opportunity to restrain the crime or aid the victim?"; (3) "What was the duration of the interaction between the perpetrators of the [underlying] felony and the victims?"; (4) "What was the defendant's knowledge of . . . her confederate's propensity for violence or likelihood of using lethal force?"; and (5) "What efforts did the defendant make to minimize the risks of violence during the felony?" (*Id.*, citing *Clark*, *supra*, 63 Cal.4th at pp. 618–623.)

Substantial evidence supports the finding that appellant acted with reckless indifference to human life. First, although appellant did not personally use a gun, she was aware that her confederates were armed. Second, appellant was near her boyfriend and Barroso when they shot Rivas, and nothing suggests she acted to prevent the killing or lend aid to Rivas. The third factor, duration, is neutral in this case because there is no indication that the encounter leading up to the killing was prolonged. (Cf. *People v. Emanuel* (2025) 17 Cal.5th 867, 886.) Fourth, appellant was aware of Barroso's propensity to shoot, given that he announced his intention to shoot one of the earlier victims (but was dissuaded from doing so), and then did in fact

9

shoot at the next victim, who escaped from the attempted carjacking.  Fifth and finally, appellant made no effort to minimize the risk of violence.  She did not tell the men to leave their guns in the car; nor did she intervene or speak up after her roommate punched Rivas's fiancée in the face, which quickly escalated to the killing of Rivas.

## 3.  The trial court did not err in admitting testimony from the parole board hearing

Appellant contends that the admission of statements she made at her parole hearing violates *People v. Coleman* (1975) 13 Cal.3d 867, 873.  We disagree.  *Coleman* held that a defendant's testimony at a probation revocation hearing could not be used in the prosecutions case-in-chief in a subsequent criminal trial on the related charges, except for impeachment purposes, because such use would conflict with the policies underlying the privilege against self-incrimination.  (*Id*. at pp. 873–876, 878.)  A sentence modification under section 1172.6 is an act of lenity and not a criminal trial.  Appellant's Fifth Amendment privilege against self-incrimination is therefore not implicated in the context of an 1172.6 evidentiary hearing.  (Accord, *People v. Rodriguez* (2025) 110 Cal.App.5th 458, 466, 468; *People v. Zavala* (2024) 105 Cal.App.5th 366, 374; *People v. Duran* (2022) 84 Cal.App.5th 920, 927–928 (*Duran*); *People v. Myles* (2021) 69 Cal.App.5th 688, 703, 706; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 580–581 (*Mitchell*).)

Presiding Justice Stratton's dissent in *Mitchell* would apply use immunity during a section 1172.6 evidentiary hearing because, in her view, "[the] use of [a defendant's] statements" at such a hearing is "fundamentally unfair," which is "the only rationale upon which *Coleman* is premised."  (*Mitchell, supra*, 81

10

Cal.App.5th at p. 604 (dis. opn. of Stratton, P. J.).) We respectfully disagree. *Coleman* was concerned with "protecting a fundamental constitutional right—freedom from self-incrimination during a criminal trial." (*People v. Collins* (1986) 42 Cal.3d 378, 386.) Where the privilege against self-incrimination does not apply, "any unfairness is insufficient to justify the judicial creation of use immunity." (*Duran*, *supra*, 84 Cal.App.5th at p. 931.)

## 4. The record shows that appellant voluntarily waived her right to appear

A defendant's constitutional right to be personally present at critical stages of criminal proceedings applies to section 1172.6 evidentiary hearings. (*People v. Basler* (2022) 80 Cal.App.5th 46, 57–58.) This right may be waived, however, and waiver may be express or implied. (*People v. Concepcion* (2008) 45 Cal.4th 77, 81–82; *People v. Gutierrez* (2003) 29 Cal.4th 1196, 1206 [a defendant's waiver may " 'turn, at least in part, on the [defendant's] actions' "].) We review a trial court's finding that appellant was voluntarily absent for substantial evidence. (*People v. Ramirez* (2022) 14 Cal.5th 176, 181; *People v. Espinoza* (2016) 1 Cal.5th 61, 74; *Gutierrez*, at p. 1205.)

Substantial evidence supports the trial court's finding that appellant waived her right to be physically present at the evidentiary hearing. In October 2023, appellant's counsel informed the court that appellant had been released on parole and deported, but that she wanted to attend the evidentiary hearing in person. The court scheduled an OSC setting hearing for December 4, 2023, at which her counsel reiterated that appellant wanted to appear.

11

The court scheduled a further hearing for February 29, 2024. Appellant did not appear at that hearing, and her counsel reported that she had been unable to reach appellant despite multiple attempts. The court scheduled yet another OSC setting date, this time for May 7, 2024.

Appellant appeared by video at the May 7 hearing, but she and her counsel had yet to confer about whether she would testify at the evidentiary hearing. The court set the evidentiary hearing for July 17, 2024, and ordered appellant to reappear on that date without further notice. She replied that she understood.

Appellant then failed to appear at the July 17 hearing. The court proceeded in her absence, but set a further hearing to give appellant one last chance to appear and testify. The trial court considered the trial transcripts and heard arguments from the parties before taking the matter under submission.

At the final hearing on October 15, 2024, appellant's counsel reported that appellant continued to express a desire to appear. Her counsel had informed her of the date and time of the hearing, but she nonetheless again failed to appear.

This record amply supports the trial court's conclusion that appellant had multiple opportunities to be present and simply chose not to.

## DISPOSITION

The trial court's order is affirmed.

NOT TO BE PUBLISHED.


GILBERT, J.*

We concur:



CHAVEZ, Acting P. J.



RICHARDSON, J.

---

**\*** Retired Presiding Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.