# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

MARCOS ANTONIO RAMIREZ,
Defendant and Appellant.

S262010

Fifth Appellate District
F076126

Tuolumne County Superior Court
CRF50964

---

December 5, 2022

Chief Justice Cantil-Sakauye authored the opinion of the Court, in which Justices Corrigan, Groban, Jenkins, and Guerrero concurred.

Justices Liu filed a dissenting opinion.

Justice Kruger filed a dissenting opinion.

---

PEOPLE v. RAMIREZ

S262010


Opinion of the Court by Cantil-Sakauye, C. J.


A criminal defendant has a constitutional right to be present at trial. Yet, once trial has commenced in the defendant's presence in a noncapital felony case, the trial court may continue the trial in the defendant's absence under Penal Code section 1043, subdivision (b)(2) (hereafter section 1043(b)(2)), provided that the absence is voluntary.[1] We granted review in this matter to decide whether the Court of Appeal erred when it upheld the trial court's finding that defendant Marcos Antonio Ramirez was voluntarily absent under section 1043(b)(2).

Defendant failed to appear in court on the second day of trial. Earlier that morning, emergency medical personnel and police officers had been dispatched to defendant's home after a possible drug overdose was reported. According to a police officer who responded to the home, defendant had initially declined medical care, but ultimately decided to be taken by his mother to a hospital rather than to court. The trial court ruled that defendant was voluntarily absent under the circumstances, and it continued trial without him in accordance with section 1043(b)(2).

On appeal, defendant claimed the trial court violated his constitutional rights by finding him to be voluntarily absent

---

[1]    Subsequent statutory references are to the Penal Code.

1

without conducting an evidentiary hearing regarding the circumstances of his absence. A divided Court of Appeal ruled that substantial evidence supported the trial court's finding that defendant voluntarily absented himself from trial. It further ruled that the court's decision to proceed with trial, rather than grant defense counsel's motion for a one-day continuance, constituted harmless error. (*People v. Ramirez* (Mar. 5, 2020, F076126) [nonpub. opn.].)

A trial court must assess the totality of facts when determining whether a defendant is voluntarily absent under section 1043(b)(2). A defendant's absence from trial due to drug use is not per se voluntary for purposes of section 1043(b)(2). Rather, it is among the relevant circumstances that a trial court must consider when it decides whether a defendant has voluntarily absented himself or herself from trial. To the extent the trial court's ruling or the Court of Appeal's decision suggests that a defendant who ingests illicit drugs and subsequently seeks medical attention is voluntarily absent as a matter of law, we disagree with this proposition.

Nevertheless, we hold that substantial evidence supports the trial court's finding of voluntary absence under the circumstances. In *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996, we explained that when an appellate court reviews a finding that a fact has been proved by clear and convincing evidence, an intermediate standard of proof, the reviewing court evaluates "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." Assuming without deciding that we employ this heightened review to the trial court's determination that defendant's voluntary absence was clearly established, we conclude that the record as a whole

contains substantial evidence from which a reasonable fact finder could have found it highly probable that defendant was voluntarily absent. Because the Court of Appeal upheld the trial court's determination that defendant had voluntarily absented himself from trial under section 1043(b)(2), we affirm the judgment of the Court of Appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with first degree residential burglary. (§ 459.) He pleaded not guilty to the charge and a jury trial was set for April 12, 2017, but he failed to appear on that date. Defense counsel informed the court that defendant's mother had called his office and notified him that defendant was ill. The trial court vacated the jury trial and ordered defendant to appear for trial setting the next day. It also issued a bench warrant but stayed execution of the warrant until the following day. On April 13, after the trial court received a doctor's note regarding defendant's prior illness, it rescheduled trial for July 5, 2017.

Defendant was present with counsel at the start of trial on July 5, at which time the jury was selected and sworn in. Following preliminary instructions to the jury, the trial court released the jurors for the day and ordered them to return the next day at 8:30 a.m. Defendant was released on his previously sworn promise to appear.

On the morning of July 6, defendant failed to appear in court. At 9:30 a.m., outside the presence of the jury, the court called the matter with the prosecutor, defense counsel, and Sonora Police Officer John Bowly present to recap an earlier in camera discussion regarding defendant's absence. The court summarized:

"THE COURT: It appears this morning [defendant] injected or ingested heroin and methamphetamine — at least the report to the Court indicated he overdosed and medical personnel were sent to his home. . . . [T]he first alert to this condition was given to [defense counsel] by [defendant's] mother, and [defense counsel] then notified [the prosecutor] by e-mail of a problem. When . . . counsel arrived today to court, I had been in chambers. We discussed the situation. My understanding was that — again, that emergency personnel were at the scene and examined [defendant,] who refused medical treatment.

"It's my understanding that Officer Norris, who was present at the scene, had observed the defendant at the time medical treatment was refused. The Court had Officer Bowly contact Officer Norris to explain the situation, and . . . I asked Officer Norris to go to the defendant's home and advise him that we were expecting him to show up for trial. And the first response from the defendant was that he would be here — he will be here for trial. And I advised him that if he failed to appear in 15 minutes, which is a reasonable time to arrive in court given the distance of his home from the courthouse, that I would proceed to try him in his absence. [Defense counsel] . . . then asked if he was going to go to the hospital, and the defendant then claimed he wanted to go to the hospital. And at that point I don't know if he's gone to the hospital or not."

Defense counsel then received a call from defendant's mother, and reported that she stated she was with defendant at the emergency room waiting to see a physician. The following colloquy occurred:

"THE COURT: All right. It's also my understanding . . . that this is the second time that [defendant] has been sick on the day of trial. The first time, which I believe was back in April when this case was set for trial, on the day of trial he requested his mother report to the Court that he was sick with the flu. Court continued his trial and issued a bench warrant and ordered him to appear the next day. The next day his mother appeared, not the defendant, and she had a note from a doctor that said he was seen at the Sonora Regional Medical Center.[2] [¶] Any other facts, [c]ounsel, that should be on the record regarding this incident?

"[Prosecutor]: Yes, your Honor. . . . The Court mentioned in the beginning that the information was he had ingested drugs this morning. I think that the information was the mom believed he had gone out with another individual. She thinks he came back home around 2:00 a.m. It was my understanding that he ingested it sometime in the night.

"I received a text message from Officer Bowly . . . at 7:00 a.m. in the morning indicating that at 7:00 a.m. [the] Sonora Police Department had responded to [defendant's] home

---

[2] The minute order indicates that defendant failed to appear in court on April 12, 2017, but was present in court on April 13. However, in its recitation of facts concerning defendant's second absence from trial on July 6, the trial court stated twice that defendant's mother, and not defendant, was present in court on April 13. Neither the prosecutor nor defense counsel voiced that the court was mistaken or otherwise indicated that defendant had personally appeared on April 13. In any event, it is undisputed that defendant did not appear on April 12, the date when his trial was initially set, and the trial court did not assign significant weight to defendant's asserted presence (or failure to appear) in court the following day.

for the mother reporting that there was a potential overdose on heroin. When the officers arrived medical was there, and at 7:24 a.m. I got a message that the defendant declined medical attention and refused to go in an ambulance to the hospital. That was 7:24 a.m. Our court hearing today was at 8:30 a.m. He did not show up at 8:30.

"When we met with the judge and the phone call was placed and Officer Norris responded back to the house, it was at . . . approximately 9:25. The defendant originally indicated over the phone — which we can all hear Officer Norris, that he was going to come at about 9:30 this morning. When the Court indicated that Officer Norris should give him a ride, he was then asked if he was going to the hospital. At that point, he switched, instead of coming to court, that he would rather go to the hospital.

"Apparently, he is waiting to see the doctor. It doesn't appear that he's not conscious. We also have information that he appeared to Officer Norris to be coherent when answering the questions to medical. He was able to walk unassisted. He was conscious and apparently still appears to be that way.

"As the Court mentioned, this is the second time, I believe, the defendant is voluntarily trying to avoid the process of the Court.

"Those [are] additional facts I wanted to put on the record, he declined medical and then chooses to go to the hospital some — now almost getting to way over an hour after when he was suppose[d] to be here and two hours after medical first contacted him.

"THE COURT: [Defense counsel], would you like to put any other facts on the record?

"[Defense counsel]: Yes, your Honor. When we spoke to Officer Norris, Officer Norris clearly indicated that defendant was . . . under the influence of drugs. [¶] In speaking to the mother, she said that [defendant] was nodding out and being conscious and nonresponsive, and she said she was going to try to take him to the hospital. Then on the last call [defendant's mother] said she was taking him out to the car to take him to the hospital. This latest phone call says that she was successful in getting him to the car.

"[Defendant] is 19 years old. He does have some learning disabilities. So a lot of things he says on the phone, your Honor, cannot be taken at face value. [¶] And also if [defendant is] under the influence of drugs, I think he is likely to say anything to the policeman that was at his home. Therefore, I will suggest we continue the case until tomorrow 8:30 or declare a mistrial.

"[Prosecutor]: And, your Honor, I have plans to be out of town tomorrow afternoon that have been in place for some time now.

"THE COURT: All right. . . . [Section 1043(b)(2)] . . . provides that the absence of a defendant in a criminal felony case shouldn't prevent the . . . continuing with the trial that's already been commenced, the record will reflect [defendant] was present during jury selection process and when the jury was sworn. And so, again, his absence should not necessarily prevent the continuance of the trial all the way through verdict if the defendant is voluntarily absent from trial.

"So the issue before the Court is whether or not [defendant] is voluntarily absent from the trial. And clearly the obvious cases — some case law supports this where the defendant escapes or absents himself from the trial or when

there is disruptive behavior, and the defendant is warned he will be removed from the courtroom because of disruptive behavior.

"But I think it's clear that in any case, criminal or civil, the law doesn't allow him to take advantage of his own wrongdoing to delay the process of the court. [Defendant] voluntarily ingested controlled substances to the extent that it required emergency response by police and emergency medical care, emergency medical personnel. Apparently, he was not as seriously — in such a serious condition that he cannot refuse treatment and which he in fact did. And it was only when he was asked if he was going to the hospital after I advised him to be in court in 15 minutes, that Officer Norris will give him a ride, that he decides to go to the hospital.

"This is the second time on the day of trial or the first time on the day of trial before it commenced that he — his mother, again, reported that he had a medical condition, specifically the flu, I believe, and he could not be present; he was vomiting and could not be present. It wasn't until the next day she came in with a doctor's note that he was in fact seen at the hospital. We have no idea of the nature of his condition or what he was seen for or what the diagnosis was, just that he went to the hospital the next day.

"In this case the trial commenced. We get a call in the morning of the trial or the Court was advised the morning of the trial that he has engaged in some conduct voluntarily which made it — prevented him from attending the trial. Given these circumstances, I think [defendant] voluntarily engaged in conduct that resulted in him being absent from his own trial, and I am going to proceed with this trial in his absence, and [defense counsel's] request for a mistrial is denied, request for a

continuance is denied, but I think there's an adequate record here to preserve any issues that might arise on appeal.

"Anything else, Counsel?

"[Prosecutor]: No, your Honor, thank you.

"[Defense counsel]: Just one, he may have voluntarily used some drugs. I think the court is making a big assumption that he continued to voluntarily use drugs to the extent that he needed medical treatment. That portion we really don't know.

"[Prosecutor]: Well, except that he did not go. The initial call for medical came at 7:00 a.m. They responded. He refused medical. He was conscious and coherent, according to Officer Norris. [¶] It's now at 9:25 when he is told he needed to be in court or the judge was going to continue with the trial, did he then decide he wanted to go to the hospital some two and a half hours after the first call for medical.

"THE COURT: All right. There's no evidence that somebody forcibly injected or caused [defendant] to consume controlled substances — to use controlled substances to put him in the condition he was in this morning when his mother made the phone call to [defense counsel's] office . . . . His voluntary use — intentional use of controlled substances is a voluntary act which caused this circumstance. And I consider that an intentional act which caused him to be absent from the court. I think he waived his right to be present at his trial based on these circumstances, and we will proceed with the trial."

The court then directed defense counsel to contact defendant's mother to inform her the court planned to proceed with the trial without defendant. Defense counsel confirmed that he had notified defendant's mother as instructed, and proceedings resumed in front of the jury at 9:55 a.m. The court

informed the jurors that trial would be proceeding in defendant's absence and instructed them not to consider the reason for his absence or the fact that he was absent for part of the trial in their deliberations.

The prosecution rested its case at approximately 11:00 a.m., following testimony from its two witnesses. Defense counsel stated that he had no witness "at this time." The trial court then called the attorneys for a sidebar conversation and told defense counsel that it was willing to take a recess if the defense wanted to bring defendant's mother to court. Defense counsel replied, "My thinking was to move things along." He suggested, "We can break, go over jury instructions, come back at 1:15 or 1:30, and then if they're not here, then I will rest and then we will do closing." He also advised the court that he had asked defendant's mother to bring defendant to the courtroom if they were done at the hospital. The court released the jury until 1:15 p.m.

The trial court discussed the proposed jury instructions with counsel during the break in proceedings. The court indicated that it would refrain from giving certain jury instructions until defense counsel confirmed whether defendant or his mother would testify in the afternoon. The prosecutor then inquired whether defense counsel had heard from defendant. Defense counsel responded that he had "been texting" with defendant's mother and kept her updated about the proceedings. According to defense counsel, defendant's mother indicated that she was not sure whether defendant could return to court at 1:30 p.m. to testify, but that they would "definitely try." The court asked defense counsel to inform the prosecutor once he received confirmation regarding whether defendant would testify.

Just before 2:00 p.m., defense counsel renewed his motion for a mistrial on the ground that defendant had gone to the emergency room that morning and was still not present. The court denied the renewed motion without further comment. The court then asked defense counsel whether defendant was still in the hospital. Defense counsel confirmed that defendant was not in the hospital, adding, "I think he went back home with mom." The court inquired whether that information was reflected in a text message from defendant's mother, and defense counsel responded that it was. The court subsequently noted on the record that defendant was no longer in the hospital and that it had given defendant an opportunity to appear at trial and put on any testimony or defense that he may have had. Defense counsel noted that defendant's mother had told him defendant was "in no state to come to court and take the witness stand," adding, "whatever that means." The defense then rested without presenting any witnesses. Following court instructions and closing arguments, the jury began deliberating. The jury was released for the evening and ordered to reappear the following day.

On July 7, the jury resumed deliberations and the court reconvened to address jury questions. Defendant was present in court after the morning session began. The jury found defendant not guilty of first degree residential burglary but found him guilty of the lesser included offense of attempted first degree burglary.

Following the jury's verdict, the prosecutor requested that defendant be remanded into custody prior to sentencing based on his prior serious felony conviction and multiple court absences. Defense counsel objected, stating: "Aside from last April when he had the stomach flu, [defendant] has made all

court appearances except for yesterday, which might have been a moment of panic."

The trial court ordered defendant to be remanded to the custody of the sheriff until sentencing. It explained: "[Defendant's] prior failure to appear from illness, the Court accommodated. [The] Court established a record in this case as to why it continued in defendant's absence. He voluntarily ingested controlled substances too, which is voluntary conduct that caused him to absen[t] himself from this trial, whether he's able to be here or not, he could have appeared yesterday because he was home according to the text message you received . . . and could have been in court. In any event, I think his conduct suggests he may not appear."

At the sentencing hearing approximately three weeks later, the court sentenced defendant to five months in jail, suspended imposition of the sentence, and placed defendant on probation for five years. As a condition of probation, defendant was required to complete a residential drug treatment program.

Defendant appealed his conviction, arguing that the trial court violated his constitutional rights by finding him voluntarily absent and proceeding with trial in his absence. A divided Court of Appeal affirmed the judgment in an unpublished decision. The majority held that the record at the time of the trial court's ruling clearly supported its implied findings that defendant was aware of the processes taking place and knew he had a right and obligation to be present, as well as the court's express finding that defendant voluntarily absented himself from trial. The majority found defendant's claim that the trial court should have granted his request for a one-day continuance to be "a much closer question," but declined to

address the question on the merits by assuming error but finding it harmless. (*People v. Ramirez, supra*, F076126.)

The dissenting justice perceived the trial court as having misapplied the applicable law in finding that defendant was voluntarily absent from trial, and further concluded that, without an evidentiary hearing, the record was insufficient for the trial court to find that defendant intended to waive his fundamental constitutional right to be present at trial. The dissenting justice also regarded the trial court's rejection of the defense request for an overnight continuance as prejudicial error.

We granted review to decide whether the Court of Appeal erred in affirming the trial court's finding that defendant was voluntarily absent on the second day of trial.

## II. DISCUSSION

A criminal defendant's right to be present at trial is protected under both the federal and state Constitutions. (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15; *People v. Espinoza* (2016) 1 Cal.5th 61, 72 (*Espinoza*).) Yet that right is not absolute; it may be expressly or impliedly waived. (*Espinoza*, at p. 72.) As the United States Supreme Court explained more than a century ago, "[W]here the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present." (*Diaz v. United States* (1912) 223 U.S. 442, 455.) California has codified this rule as section

1043(b)(2). (*Espinoza*, at p. 72, citing *People v. Gutierrez* (2003) 29 Cal.4th 1196, 1204 (*Gutierrez*).)

" 'In determining whether a defendant is absent voluntarily, a court must look at the "totality of the facts." ' " (*Espinoza, supra,* 1 Cal.5th at p. 72.) We have often cited the high court's decision in *Taylor v. United States* (1973) 414 U.S. 17 (*Taylor*) as instructive when evaluating whether, under section 1043(b)(2), a defendant is voluntarily absent after trial has commenced. (*Espinoza*, at p. 73; *People v. Concepcion* (2008) 45 Cal.4th 77, 84 (*Concepcion*); *Gutierrez, supra,* 29 Cal.4th at p. 1204.) In *Taylor*, the court confirmed that " '[i]f a defendant at liberty remains away during his trial the court may proceed provided it is clearly established that his absence is voluntary. He must be aware of the processes taking place, of his right and of his obligation to be present, and he must have no sound reason for staying away.' " (*Taylor*, at pp. 19–20, fn. 3, quoting *Cureton v. U.S.* (D.C. Cir. 1968) 396 F.2d 671, 676.) We have affirmed that a trial court must adhere to *Taylor*'s three-part test when evaluating whether a defendant is voluntarily absent under section 1043(b)(2). (*Espinoza*, at p. 74.)

We have previously recognized that "[t]he role of an appellate court in reviewing a finding of voluntary absence is a limited one. Review is restricted to determining whether the finding is supported by substantial evidence." (*Espinoza, supra,* 1 Cal.5th at p. 74, citing *Concepcion, supra,* 45 Cal.4th at p. 84.) But we have not yet had occasion to explore how the substantial evidence standard of review applies in the context of a trial court's factual finding that must be " 'clearly established.' " (*Taylor, supra,* 414 U.S. at p. 19, fn. 3.)

Our trial courts typically apply one of three standards of proof depending on the particular determination of fact:  the "preponderance of the evidence" standard, the "clear and convincing evidence" standard, or the "beyond a reasonable doubt" standard.  (See *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 998.)  The preponderance of the evidence standard, the lowest standard of proof, " ' "simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence.' " ' "  (*Ibid.*)  The clear and convincing evidence standard, the intermediate standard, " 'requires a finding of high probability' " that a fact is true.  (*Ibid.*)  The beyond a reasonable doubt standard, the most rigorous standard of proof, applies to findings of guilt in criminal matters and requires the trier of fact to hold "an abiding conviction that the charge is true" although it "need not eliminate all possible doubt."  (CALCRIM No. 220; see *Conservatorship of O.B.*, at p. 998, quoting § 1096.)

The parties did not brief the question of what standard of proof applies when a trial court determines it is "clearly established" a defendant has voluntarily absented himself from trial.[3]  We note that *Taylor*'s "clearly established" requirement could arguably convey a heightened standard of proof designed to protect a defendant's fundamental constitutional right to be present, which might suggest the intermediate clear and convincing standard.  (See *Gutierrez*, *supra*, 29 Cal.4th at p. 1209 [explaining that a defendant's right to presence is

---

[3]    When asked at oral argument what the "clearly established" standard requires, the parties provided slightly different interpretations but agreed that the standard was no more stringent than the "clear and convincing evidence" standard.

fundamental in our system of justice and guaranteed by our Constitution]; *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 999 [clear and convincing standard "applies to various determinations ' "where particularly important individual interests or rights are at stake" ' "].) Nevertheless, we need not decide this issue. Assuming for our limited purposes that the trial court's finding of a clearly established voluntary absence was akin to a finding by clear and convincing evidence, that finding is supported even reviewing it under this more demanding standard applicable to such findings.[4]

In *Conservatorship of O.B.*, *supra*, 9 Cal.5th 989, we clarified how an appellate court is to review the sufficiency of the evidence associated with a finding made by the trier of fact pursuant to the clear and convincing standard. Explaining that "appellate review of the sufficiency of the evidence in support of a finding requiring clear and convincing proof must account for the level of confidence this standard demands" (*id.* at p. 995), we

---

[4]     The dissenting opinion would prefer to address what standard of proof must be met to "clearly establish" that a defendant's absence is voluntary, despite neither party having briefed the issue, because "[n]either party here questions that 'clearly established' means something more than proof by a preponderance of the evidence." (Dis. opn. of Liu, J., *post*, at pp. 3–4.) We are not prepared to agree with this assumption in light of the parties' statements at oral argument described *ante*, footnote 3, and the holdings of numerous courts to the contrary. (See, e.g., *State v. Moore* (Iowa 1979) 276 N.W.2d 437, 440 [voluntary absence must be proved by a preponderance of the evidence]; *State v. Lister* (N.H. 1979) 406 A.2d 967, 969 [same]; *People v. Anderson* (N.Y.App.Div. 2003) 762 N.Y.S.2d 551, 551 [same]; *Dorsey v. State* (Md.Ct.App. 1998) 709 A.2d 1244, 1253 [same]; *Commonwealth v. Carusone* (Pa.Super. 1986) 506 A.2d 475, 478 [same].)

concluded that "when reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true" (*id.* at pp. 995–996).

Thus, assuming the clear and convincing evidence standard of proof applies to the trial court's voluntary absence determination, the question on review is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that defendant's absence was voluntary. Put differently, we review the entire record to determine whether there is substantial evidence from which a reasonable fact finder could have found it highly probable that defendant was " ' "aware of the processes taking place,' " that he knew of ' "his right and of his obligation to be present," ' and that he had ' "no sound reason for remaining away." ' " (*Espinoza, supra*, 1 Cal.5th at p. 74, quoting *Taylor, supra*, 414 U.S. at p. 19, fn. 3.) We apply this standard of review to the present case, keeping in mind that an appellate court "must view the record in the light most favorable to the [trier of fact's finding] and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B., supra*, 9 Cal.5th at p. 996.)

We conclude that the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that defendant was voluntarily absent. Having been present in court on the first day of trial and been ordered by the court to return the following day, it is obvious that defendant was aware of the processes taking place

and knew of his right and obligation to be present the next day. (See *Espinoza, supra,* 1 Cal.5th at p. 74.) Defendant does not dispute this. The only question, then, is whether defendant had no sound reason for remaining away.

Viewed in the light most favorable to the trial court's finding of voluntary absence and giving due deference to how the court may have evaluated the credibility of those present at defendant's home, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence, the record supports the trial court's implicit determination that defendant had no sound basis for failing to appear on the second day of trial. After learning that defendant was not present in court and had ingested illicit drugs to the extent that it prompted an emergency response, the trial court sent an officer to defendant's home to confirm his condition and to arrange for defendant to come to court. In making its voluntary absence ruling, the court emphasized that defendant was sufficiently lucid to assess whether he needed medical treatment, which he initially refused.[5] The court pointed out that it was only after it advised

---

[5] As the prosecutor emphasized at the time of the voluntary absence ruling, emergency medical services personnel dispatched to defendant's home accepted defendant's refusal of medical treatment. We take judicial notice on our own motion of Tuolumne County Emergency Medical Services Agency's policy regarding patient refusal of emergency medical services, which provides that a patient may refuse emergency care only if emergency medical services personnel determines that the patient is "competent," meaning "a patient who is alert and oriented with the capacity to understand the circumstances surrounding their illness or impairment and the risks associated with refusing treatment or transport." (Tuolumne County Emergency Medical Services Agency, Patient Refusal of

defendant to be in court in 15 minutes that defendant decided to go to the hospital. The court also noted that this was the second time that defendant had failed to appear on the day of trial, and although defendant's mother had reported on the trial date scheduled in April that defendant was ill with the flu, the court had "no idea of the nature of his condition or what he was seen for or what the diagnosis was." Defense counsel did not contradict these observations even after the court invited him to add to the record.

Indeed, to the extent we may consider information provided to the trial court after it found defendant to be voluntarily absent, we note that no subsequent evidence undermined the court's determination. (Cf. *Concepcion, supra*, 45 Cal.4th at p. 85, citing *People v. Connolly* (1973) 36 Cal.App.3d 379, 384–385 [noting that "defendant did not move for reconsideration of the determination of voluntary absence, and he did not seek to bring to the trial court's attention any new evidence that purportedly undermined that determination"].) At approximately 11:00 a.m., after the prosecution put on its witnesses, the court and counsel agreed to a recess of more than two hours in order to give defendant a chance to appear and

---

Treatment or Transport Against Medical Advice AMA <https://tuolumnecounty.ca.gov/DocumentCenter/View/20633/Policy-41000-Patient-Refusal-of-Treatment-or-Against-Medical-Advice> [as of November 30, 2022]. All internet citations in this opinion are archived by year, docket number, and case name at <http://courts.ca.gov/38324.htm>.) Although the policy is not of substantial consequence to the determination of this action (see Evid. Code, § 459), it provides useful context regarding the trial court's consideration of defendant's refusal to accept medical treatment in making its voluntary absence finding.

testify, and defense counsel informed defendant's mother of this plan. Yet defendant and his mother returned home instead of coming to court that afternoon. It appears that defendant himself never contacted his counsel or the court at all during the entire day to update them regarding his condition — the court received only uncorroborated information from defendant's mother via defense counsel. And when defendant was present at court the following day, he offered no additional information regarding the hospital visit, such as the seriousness of his condition, when he was discharged, and why he could not attend court the previous afternoon. Nor did defendant move for reconsideration of the trial court's ruling. (*Concepcion*, *supra*, 45 Cal.4th at pp. 84–85 ["We reject defendant's contention that the trial court had a sua sponte duty to reconsider its ruling once he was recaptured. It was up to defendant to move for reconsideration, which he failed to do. Even now he has failed to identify any new information that would have tended to undermine the trial court's determination of voluntary absence."].) Finally, in opposing the prosecution's request to remand defendant for sentencing, defense counsel acknowledged that defendant's absence on the second day of trial "might have been a moment of panic."

Defendant asserts the trial court erroneously found that he was voluntarily absent merely because the absence was "self-induced" based on his drug use. As a general proposition, we agree with defendant that a defendant who ingests illicit drugs and subsequently requires medical assistance after trial has commenced has not, invariably, voluntarily absented himself or herself. We reaffirm that "[i]n determining whether a defendant is absent voluntarily, a court must look at the 'totality of the facts.'" (*Gutierrez, supra*, 29 Cal.4th at p. 1205; see *Espinoza*,

*supra*, 1 Cal.5th at p. 72.) And it is true that the trial court here did at times place heavy reliance on defendant's drug use. But the record as a whole demonstrates that the trial court did consider all of the information available and made a factual finding that, notwithstanding the effects of his drug use, defendant could have come to court and voluntarily chose not to do so. Substantial evidence supports that finding.

From the court's references to defendant's only partly explained absence from court at the first trial date in April, his initial refusal to receive medical attention after medical personnel were dispatched to his home on the morning of July 6, and his decision to go to the hospital only after the court advised him to be in court in 15 minutes, we understand the court to have been unconvinced that defendant, especially by 9:30 a.m. — more than two hours after medical personnel had been dispatched to defendant's home — was truly debilitated and unable to come to court. That disbelief seems to have played an important part in the court's determination that defendant was voluntarily absent. The circumstance that defendant's condition, whatever it was, stemmed from voluntary drug use certainly also played a significant role. But the record does not support defendant's characterization of the trial court's finding as resting on an asserted rule that an absence stemming from drug use is per se voluntary. Indeed if this were so, the court's inquiries to and colloquies with counsel, its unsuccessful advisement to defendant that he be in court in 15 minutes, and its later spontaneous willingness to recess for nearly three hours after the prosecution rested its case would likely not have occurred. Rather, the record as a whole reflects that the trial court tried to ascertain whether defendant was absent voluntarily. Put differently, the trial court does appear to have

considered all the circumstances shown by the evidence before it, even though it placed substantial emphasis on the apparently intentional nature of defendant's drug use.

In sum, viewing the record in the light most favorable to the trial court's finding, we conclude that substantial evidence supports the trial court's ruling that defendant was voluntarily absent. Our review of the record as a whole reveals substantial evidence from which a reasonable fact finder could have found it highly probable that defendant was aware of the processes taking place, of his right and obligation to be present, and that he had no sound reason for staying away.[6] Accordingly, we conclude that the Court of Appeal did not err when it affirmed the trial court's finding that defendant was voluntarily absent.[7]

---

[6] To the extent the dissent suggests that additional information might have cast a different light on defendant's absence, the responsibility to present such evidence lay with defense counsel.

[7] Defendant's petition for review did not adequately raise the additional question of whether the trial court abused its discretion when it denied defense counsel's motion for a continuance. (Cal. Rules of Court, rule 8.516(b)(1); *Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 654, fn. 2.) Even if the secondary issue were adequately raised, we are not compelled to address it and decline to do so here. (Cal. Rules of Court, rule 8.516(b)(3) ["court need not decide every issue the parties raise"]; *Coast Community College Dist. v. Commission on State Mandates* (2022) 13 Cal.5th 800, 814, fn. 4.)

## III. DISPOSITION

We affirm the judgment of the Court of Appeal.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CORRIGAN, J.**
**GROBAN, J.**
**JENKINS, J.**
**GUERRERO, J.**

PEOPLE v. RAMIREZ

S262010

Dissenting Opinion by Justice Liu

Defendant Marcos Antonio Ramirez was 19 years old and had been using heroin for almost a year when he overdosed on the night before the presentation of evidence was scheduled to begin in his burglary trial. Police and medical personnel were dispatched to his home in the morning. After initially declining medical treatment and telling an officer he would make it to court, Ramirez instead decided to go to the hospital and received care at the emergency room.

The trial court concluded that Ramirez was voluntarily absent from trial that day. Observing that "Ramirez voluntarily engaged in conduct that resulted in him being absent from his own trial," the court decided it would "proceed with this trial in his absence," and it denied defense counsel's request for a one-day continuance so that Ramirez could be present. The presentation of evidence began and ended that day without Ramirez, and the jury convicted him of attempted burglary the next day.

A criminal defendant has a right to be present at his own trial under the Fifth and Sixth Amendments to the United States Constitution. These rights are waived by a defendant's absence only if " 'it is clearly established that his absence is voluntary.' " (*Taylor v. United States* (1973) 414 U.S. 17, 19, fn. 3 (*Taylor*).) Even if a court finds a defendant voluntarily absent, it must grant a continuance of trial to allow the

1

defendant to return unless " 'the public interest clearly outweighs that of the voluntarily absent defendant.' " (*U.S. v. Latham* (1st Cir. 1989) 874 F.2d 852, 857.) To weigh those interests, the court should assess " 'the likelihood that the trial could soon take place with the defendant present,' " " 'the difficulty of rescheduling,' " and " 'the burden on the Government.' " (*Ibid.*, quoting *U.S. v. Tortora* (2d Cir. 1972) 464 F.2d 1202, 1210 (*Tortora*).)

I agree with today's opinion that the trial court should not have found that Ramirez's voluntary drug use necessarily rendered him voluntarily absent from trial. But I cannot agree that the sparse record before us contains sufficient evidence by which the trial court could have found it clearly established that Ramirez voluntarily absented himself from trial under the correct standard. Nor can I agree that Ramirez has forfeited his challenge to the denial of his motion for a one-day continuance. Ramirez raised that argument in the trial court, in the Court of Appeal, and in his petition and briefing before us, and the Attorney General has never disputed that Ramirez properly preserved the issue for our review. Because the trial court erred by finding Ramirez's absence voluntary and by denying the continuance request, and because holding trial in Ramirez's absence was prejudicial, I would reverse the judgment.

## I.

I agree with today's opinion that a defendant's voluntary ingestion of drugs and subsequent absence from trial as a result of that drug use are alone insufficient to establish that the defendant voluntarily waived the right to be present at trial. (See maj. opn., *ante*, at pp. 20–21; see also *People v. Bell* (2019) 7 Cal.5th 70, 114 [a defendant's waiver of the right to be present

must be "knowing, intelligent, and voluntary"].)  I do not agree, however, that the record before us contains substantial evidence by which the trial court reasonably could have found such a waiver.

"There can be no waiver of a constitutional right absent 'an intentional relinquishment of a known right or privilege.' " (*People v. Taylor* (1982) 31 Cal.3d 488, 497.)  Courts must " 'indulge every reasonable presumption against waiver' of fundamental constitutional rights." (*Johnson v. Zerbst* (1938) 304 U.S. 458, 464.)  In certain circumstances, defendants may impliedly waive their rights to be present at trial by voluntarily absenting themselves.  (*People v. Concepcion* (2008) 45 Cal.4th 77, 82–83.)  We look to a defendant's "purpose in failing to appear" to determine whether an absence constitutes a voluntary waiver.  (*People v. Espinoza* (2016) 1 Cal.5th 61, 74 (*Espinoza*).)  For a court to find that a defendant has waived the right to be present, " 'it [must be] clearly established that his absence is voluntary.' " (*Taylor*, *supra*, 414 U.S. at p. 19, fn. 3.)

Today's opinion does not address what standard of proof must be met for the voluntariness of a defendant's absence to be "clearly established." (*Taylor*, *supra*, 414 U.S. at p. 19, fn. 3.)  Instead, it declines to opine on the question given the parties' statements at oral argument and "the holdings of numerous courts" that voluntary absence must be proved by a preponderance of the evidence.  (Maj. opn., *ante*, at p. 16, fn. 4.)

I see no reason to avoid the question.  Future courts deciding whether to proceed in a defendant's absence would benefit from our guidance, and there seems to be little dispute about the standard.  Neither party here questions that "clearly established" means something more than proof by a

preponderance of the evidence, and no one claims it requires proof beyond a reasonable doubt. Ramirez's counsel suggested during oral argument that voluntariness must be "clearly and affirmatively demonstrated." The Attorney General agreed that the standard is "something more akin to clear and convincing [evidence]," and not merely that "the standard was no more stringent than the 'clear and convincing evidence' standard" (maj. opn., *ante*, at p. 15, fn. 3). As for the out-of-state cases applying a preponderance of the evidence standard (maj. opn., *ante*, at p. 16, fn. 4), none of them appear in the briefing before us, and none discuss the requirement stated in *Taylor* that the voluntariness of a defendant's absence be "clearly established." (*Taylor*, *supra*, 414 U.S. at p. 19, fn. 3.)

Proof by clear and convincing evidence " 'requires a finding of high probability.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998.) The evidence before the factfinder must be " ' " 'so clear as to leave no substantial doubt' " ' " and " ' " 'sufficiently strong to command the unhesitating assent of every reasonable mind.' " ' " (*Id.* at p. 998, fn. 2.) We recently concluded that "an appellate court evaluating the sufficiency of the evidence in support of a finding must make an appropriate adjustment to its analysis when the clear and convincing standard of proof applied before the trial court." (*Id.* at p. 1005.) On appeal, we "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Ibid.*) "Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and ' "substantial" proof of the essentials which the law requires in a particular case.' " (*Id.* at p. 1006.)

The record in this case does not contain substantial evidence by which the court could have found it highly probable that Ramirez overdosed and went to the hospital for the purpose of avoiding his trial. As Justice Smith explained in his dissent from the Court of Appeal's decision, "[t]here was no evidence before the trial court as to why, for what purpose, and under what circumstances, Ramirez ingested the drugs. Ramirez could very well have taken the drugs to calm himself or to fortify himself, so as to enable him to attend the proceedings, rather than in a bid to avoid the trial . . . ." Justice Smith was correct to observe that because the trial court "did not consider the question whether, in ingesting the drugs, Ramirez had intended to waive his constitutional rights to be present at trial and to testify in his own defense," and because it did not "hold[] a hearing to further develop the record," it "simply did not have sufficient information to determine whether Ramirez took the drugs to thwart the judicial proceedings that were underway, thereby waiving his right to be present, or whether he took the drugs for other reasons." (*People v. Ramirez* (Mar. 5, 2020, F076126) (dis. opn. of Smith, J.) [nonpub. opn.].)

The trial court was aware that Ramirez's mother had called police and medical services that morning to report her son's overdose. The court emphasized in its ruling that Ramirez refused treatment offered by the medical responders. However, as Justice Smith noted, it is unclear "whether Ramirez refused all forms of assistance from paramedics or merely refused transport to the hospital by ambulance." The court also had no information about "what, and how much, assistance the paramedics actually rendered." To the extent today's opinion relies on the Tuolumne County Emergency Medical Services Agency's policy on a patient's refusal of treatment or transport

(maj. opn., *ante*, at pp. 18–19, fn. 5), I note that neither party cites that policy and the record contains no indication that any such policy was followed here.

The trial court instructed an officer at the scene to inform Ramirez that the trial would proceed without him if he was not at court in fifteen minutes. Ramirez's initial response was that he would come. His counsel then asked him over the phone if he was going to go to the hospital, and he said he wanted to go. Shortly after that conversation, his mother called defense counsel to let him know that Ramirez "was nodding out and being [un]conscious and nonresponsive," and that "she was going to try to take him to the hospital." Ramirez was 19 years old, had learning disabilities, and was in the midst of a heroin overdose. The court had no information that indicated whether Ramirez understood the officer's warning that he needed to come to court or whether he was well enough to follow through on his initial agreement to do so.

Finally, the court noted that Ramirez had missed a day of trial once before. Several months earlier, when the case was initially set for trial, Ramirez's mother reported to the court that he could not make the first day of trial because he was sick with the flu. The court continued the trial, and Ramirez's mother came the next day with a note from a doctor that said he had been seen at a local medical center. There was no evidence to discredit the mother's report; the record provides no information from which the trial court reasonably could have concluded that Ramirez was absent in April because he sought to evade the proceedings rather than because he simply had the flu.

The totality of the evidence considered by the trial court is not sufficient to support a finding that it was clearly established

Ramirez voluntarily waived his right to be present when he went to the hospital to be treated for an overdose. As today's opinion acknowledges, if Ramirez went to the hospital instead of court because he "was truly debilitated" (maj. opn., *ante*, at p. 21), then he was not voluntarily absent, and his trial could not lawfully proceed without him. To find him voluntarily absent under the proper legal standard, the court would have to have been persuaded that Ramirez was malingering. It would have to have concluded that Ramirez did not need hospital treatment and knew as much, but that he chose to go with his mother anyway for the purpose of evading that day's proceedings. The thin record before us does not contain " ' "substantial" proof' " that it was " 'highly probable' " Ramirez sought medical care in an effort to avoid his trial. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1006, 998, italics omitted.) Finding Ramirez voluntarily absent was error.

## II.

Even if the court were right to affirm the finding of voluntary waiver, that would not "end our inquiry regarding the propriety of the trial court's decision to proceed with the trial" in his absence. (*Espinoza*, *supra*, 1 Cal.5th at p. 75.) "[T]he decision whether to continue with a trial in absentia . . . rests within the discretion of the trial court" and is subject to review for abuse of discretion. (*Ibid.*) Before deciding to try a defendant in absentia, "[t]he court must consider the likelihood that the trial could take place with the defendant present, the difficulty of rescheduling, the inconvenience to jurors, and the burden on the government and others." (*U.S. v. Benabe* (7th Cir. 2011) 654 F.3d 753, 769.) A trial court "may exercise its discretion to proceed 'only when the public interest clearly outweighs that of the voluntarily absent defendant.' " (*U.S. v. Bradford* (11th

7

Cir. 2001) 237 F.3d 1306, 1313, quoting *Tortora, supra,* 464 F.2d at p. 1210.) Given the importance of the constitutional rights at stake, a trial court that decides to try the defendant in absentia must make a record adequate to enable review.

The trial court here undertook no such analysis and made no such record. After finding Ramirez voluntarily absent, the court declared without further discussion that it was "going to proceed with this trial in his absence," and it denied his motion for a one-day continuance.

I agree with Justice Smith that "[a] continuance was clearly warranted here." Nothing in the record supports the conclusion that the public interest in proceeding that day outweighed Ramirez's interest in being present for his trial. The Attorney General notes that the jurors and witnesses were present, but there is nothing to suggest that any witness or evidence would have become unavailable if the trial had been continued by one day or that a one-day continuance would have posed a specific hardship to the court, the witnesses, or the jury. The Attorney General also says the court could not be sure Ramirez would show up the next day if it granted a continuance. But no court faced with an absent defendant can be certain the defendant will return if it grants a continuance. The court here had no particular reason to believe Ramirez would not be present the next day, and in fact he did return then.

The only circumstance specific to this case that the Attorney General has cited for why the public interest favored proceeding with trial on the day of Ramirez's absence was that the prosecutor had plans to be out of town the following afternoon. But the trial court did not inquire into the prosecutor's reason for being out of town and had no evidence

from which it could reasonably conclude that the prosecutor's interest in being out of town outweighed Ramirez's interest in being present for his trial, having the opportunity to testify in his defense, and confronting the witnesses against him.

Today's opinion declines to reach this issue on the ground that Ramirez forfeited his argument that the denial of his continuance motion was error. (Maj. opn., *ante*, at p. 22, fn. 7.) Ramirez sought a continuance in the trial court and later moved for a mistrial after the court proceeded in his absence. He argued in the Court of Appeal that the denial of his continuance request was error, and he pressed the claim as well in his petition and briefing before us. The Attorney General has never argued that Ramirez forfeited his continuance claim; instead, the Attorney General contests the claim on the merits in his briefing and agreed at oral argument that the claim is not forfeited.

In concluding the issue has been forfeited, the court says Ramirez did not adequately raise the continuance issue in his petition for review. While it is true that Ramirez might have referred to the continuance issue more clearly in his formulation of the issues presented for review, it is referenced in the two issues presented by his petition (Cal. Rules of Court, rule 8.516(b)(1)), and he argues it repeatedly in the petition elsewhere. Issue No. 1 of Ramirez's petition for review asks whether the Court of Appeal erred in affirming the trial court's decision to find him voluntarily absent "without conducting an evidentiary hearing regarding the circumstances of [his] absence." One of the reasons his counsel asked for a continuance was to allow time for that evidentiary hearing. Issue No. 2 asks whether the violation of Ramirez's "constitutional right to be present for trial" was prejudicial error, and the issue of prejudice

9

is informed by whether the trial court properly denied a continuance.

In any event, Ramirez's substantive arguments fairly indicated he was challenging the trial court's denial of a short continuance, not just the trial court's determination that he was voluntarily absent. Specifically, Ramirez argued in his petition that the trial court erred by "refus[ing] to continue trial to the following day" when he did not appear in court. He claimed he was "deprived of his constitutional right to be present at trial" when the trial court "determine[ed] that petitioner was voluntarily absent, without continuing the matter for one day." Citing our decision in *People v. Gutierrez* (2003) 29 Cal.4th 1196, he argued that "a trial court should not 'summarily plung[e] ahead' with trial in a defendant's absence." (*Id.* at p. 1209.)

Forfeiture doctrine serves to prevent unfair surprise to the other party and to promote the orderly presentation of issues to the court. (See *People v. Gibson* (1994) 27 Cal.App.4th 1466, 1468 ["The rule that contentions not raised in the trial court will not be considered on appeal is founded on considerations of fairness to the court and opposing party, and on the practical need for an orderly and efficient administration of the law."].) Neither concern is present here.

In sum, the continuance issue has been fully briefed, and I see no sound basis for declining to address it. I would address the issues properly raised and briefed by the parties, and I would hold that the trial court abused its discretion by proceeding in Ramirez's absence rather than granting his motion for a one-day continuance so that he could return to court.

### III.

An erroneous denial of a federal constitutional right that does not require automatic reversal is harmless only if we can conclude beyond a reasonable doubt that it did not affect the verdict. (*Chapman v. California* (1967) 386 U.S. 18, 24.) An error of state law is harmless if it is not "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.) On the record before us, I would conclude that the trial court's decision to try Ramirez in absentia was prejudicial under either standard.

The most substantial pieces of evidence linking Ramirez to the attempted burglary were a blurry video from a surveillance camera at the victim's home in which the burglar's face is not visible and the fact that when Ramirez was arrested five weeks after the crime, he was wearing an Oakland Raiders hat that appeared similar to one worn by the burglar on the surveillance tape. Ramirez's defense consisted largely of the argument that he was not the person on the surveillance video. Defense counsel told the jury he would "invite you to look at that video of the person that's removing this window screen. I would submit to you that it's not my client, doesn't look like him at all." Because the court erroneously proceeded with trial in Ramirez's absence, defense counsel had to argue to the jury that Ramirez was not the burglar on the surveillance video at a time when Ramirez was not present for the jury to compare his features to those of the person on the tape.

" '[I]t is only the most extraordinary of trials in which a denial of the defendant's right to testify can be said to be harmless beyond a reasonable doubt.' " (*People v. Allen* (2008)

44 Cal.4th 843, 872.) This trial was not extraordinary in that way. In total, the prosecutor called two witnesses, and the entire presentation of evidence took just over an hour and occupied roughly 30 pages of the reporter's transcript. Aside from the blurry surveillance video and the fact that Ramirez was wearing a hat five weeks after the burglary with the same coloring as the one worn by the burglar and the logo of a local football team, the only evidence presented against him was a short video of his conversation with police officers when they arrested him. But, as Justice Smith explained, "Ramirez never directly admitted he had burgled [the victim's] house on the night in question. Initially, Ramirez denied any knowledge of the incident. . . . After a significant amount of pressing from [Officer] Bowly, Ramirez said he was probably just looking. Later, Ramirez said he did not remember the incident. . . . During the questioning, Bowly never showed Ramirez a picture of [the victim's] house or the surveillance tape; nor did he take Ramirez by the house. Bowly also acknowledged he was not positive Ramirez knew which incident Bowly was talking about." (Italics omitted.) If Ramirez had been able to testify, he could have explained his equivocal statements to the arresting officer.

Because Ramirez was absent, the jury had no opportunity to evaluate the credibility of any argument he might have made that he was not the person on the surveillance video. Instead, the defense called no witnesses, and after about six hours of deliberations, the jury found Ramirez guilty of attempted burglary. That the jury's deliberations took four times as long as the prosecutor's presentation of evidence further suggests this was not an easy case. And Ramirez's testimony would likely have been significant in light of the limited evidence against

him.  In sum, there was a reasonable probability of a different outcome if the trial court had not decided to try Ramirez in absentia, and the judgment must be reversed.

I respectfully dissent.


**LIU, J.**

PEOPLE v. RAMIREZ

S262010


Dissenting Opinion by Justice Kruger


I agree with the majority opinion, as far as it goes. A defendant who fails to appear at trial after voluntarily ingesting illicit drugs is not necessarily voluntarily absent. But as the majority says, in this particular case there was substantial evidence to support the trial court's finding of voluntary absence under the circumstances.

The majority, however, declines to consider the natural follow-on question: Whether the trial court should have granted a short continuance rather than conducting the one-day trial entirely in the defendant's absence. I would reach that issue and I would reverse for the reasons given in parts II and III of Justice Liu's dissent.

**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Ramirez

_____

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 3/5/20 – 5th Dist.
**Rehearing Granted**

_____

**Opinion No.** S262010
**Date Filed:**  December 5, 2022

_____

**Court:**  Superior
**County:**  Tuolumne
**Judge:**  James A. Boscoe

_____

**Counsel:**

Jacquelyn Larson, under appointment by the Supreme Court, and Jennifer Mouzis, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters and Gerald A. Engler, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri, Louis M. Vasquez, Amanda D. Cary, F. Matt Chen and Rachelle A. Newcomb, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jacquelyn Larson
Central California Appellate Program
2150 River Plaza Drive, Suite 300
Sacramento, CA 95833
(916) 441-3792

Amanda D. Cary
Deputy Attorney General
2550 Mariposa Mall, Room 5090
Fresno, CA 93721
(559) 705-2305