Filed 4/11/23  Saldana v. Saldana CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOSE SALDANA,<br>　　　Plaintiff and Appellant,<br>v.<br>ANASTACIO SALDANA,<br>　　　Defendant and Respondent. | A163556<br><br>(Sonoma County<br>Super. Ct. No.<br>SCV262438) |

Plaintiff and appellant Jose Saldana appeals from a judgment reforming a deed and quieting title to a residential property in favor of his brother, respondent Anastacio Saldana.[1]  Appellant's sole contention on appeal is that the trial court erred in reforming the deed on the ground of mutual mistake.

We affirm.

**BACKGROUND[2]**

In 1959, Jack and Elsie Corry granted a one-half interest in property located at 735 Casa Grande Road in Petaluma, California (the Casa Grande

---

[1] To avoid confusion, we refer to Jose as appellant and to Anastacio by his first name.

[2] Our summary of the facts is based largely on the trial court's nine-page ruling following a bench trial.

1

property) to Rosando and Adelia Garcia[3] (the "A-portion") and granted the other one-half interest to Tony and Juanita Montoya (the "B-portion"). The deed made no mention of physical division, but the parties "have traditionally divided the property" into these two physical portions.

In April 1992, the Garcia's executed a quitclaim deed transferring the A-portion interest to the Garcia Family Revocable Trust. Seven years later, in August 1999, Adelia passed away, leaving Rosando as the sole trustee.

The following year, Rosando, as successor trustee of the family trust, executed a grant deed granting the A-portion to "Rosendo Garcia, trustee of the Rosendo Garcia Trust." (Some capitalization omitted.) A year later still, this trust was restated and granted, by way of a quit-claim deed, the A-portion interest to "Ross Garcia, Trustee of the Ross Garcia Revocable Trust dated April 14, 2000, and restated May 17, 2001." (Some capitalization omitted.) The successors-in-trust to this trust were Ross's second wife, Herminia Garcia Saldana,[4] and her sons Anastacio and Francisco Saldana.

In 2002, Rosando passed away, and two years later, the successor trustees granted the A-portion to Herminia Garcia in her individual capacity. On that same day, Herminia, "a widowed woman" granted the A-portion interest to "Hermenia Garcia trustee of the Hermenia Garcia Revocable Living Trust." (Some capitalization omitted.)

A year later, in November 2005, "Tony Montoya Trustee and Juanita Montoya Trustee, of the Montoya Family Revocable Trust dated January 26,

---

[3] Rosando Garcia is sometimes referred to as Ross Garcia or Rosendo Garcia.

We refer to the parties by their first names to avoid confusion.

[4] Herminia Garcia is sometimes referred to as Hermenia Garcia and Herminia Saldana.

1993 and Herminia G. Saldana Successor Trustee, of the Ross Garcia Revocable Trust dated April 14, 2000 & Restated May 17, 2001, who acquired title as Hermenia Garcia," executed a grant deed granting the Casa Grande Property to Anastacio Saldana, "a single man." The deed was recorded in December 2005. Anastacio then moved into the B-side of the property, while Herminia remained in the A-side.

Anastacio refinanced the property in 2007. First American Title handled the escrow. The preliminary title report issued in connection with the refinance showed Anastacio having full fee title to the property.

Around 2013 or 2014, appellant, having lost his home, moved into the A-side of the property with Herminia. The following year, in 2015, either he or Herminia found a "gift letter" dated January 2005 transferring the property from Herminia to Anastacio.[5] By that time, Herminia was 85 years old and either she or appellant contacted an estate planning attorney. The attorney "prepared a new trust purportedly transferring" the A-portion interest to appellant and Francisco, thus excluding Anastacio.[6] Neither the attorney, Herminia nor appellant notified Anastacio "that this attempted

---

[5] The letter signed by Herminia, stated: "I, Hermenia Garcia, hereby gift to my son, Anastacio Saldana, all my interest in my property located at 735 Casa Granda, [sic] Petaluma, Sonoma County, CA, APN 017-140-002. Said gift is pursuant to my interest in said property as Hermenia Garcia, Trustee of the Hermenia Garcia Revocable Living Trust Dated January 14, 2004, as to an undivided ½ interest." The Assessor's Parcel Number identified in the letter is the same as that on the November 2005 grant deed.

[6] The "Trust Transfer Deed" stated grantor "Hermenia Garcia Trustee of the Hermenia Garcia Revocable Trust dated January 14, 2004," grants her undivided ½ interest to grantees "Jose Guadalupe Saldana and Francisco Saldana co-trustees of the Hermenia Garcia Personal Residence Trust dated December 12, 2015." (Some capitalization omitted.) This deed was recorded on December 23, 2015.

transfer had taken place." The attorney also prepared a draft grant deed stating "Grantor: Anastacio Saldana," (capitalization omitted) "an unmarried man," grants the A-portion to Grantee "Hermenia Saldana Garcia, an unmarried woman, as her sole and separate property." (Some capitalization omitted.) Anastacio never signed this draft deed.

Herminia passed away two years later, in November 2017.

Thereafter, appellant filed the instant action and eventually filed a first amended complaint to quiet title to the A-portion of the Casa Grande Property and to impose an equitable lien on the property. Anastacio answered and eventually filed a third amended cross-complaint also seeking to quiet title, to impose an equitable lien, and for reformation.

At trial, Anastacio testified that he had moved in with his mother and her husband Ross Garcia in 2000 to help his mother around the house and to take her to the store and her doctor's appointments. Around December 2005, the Montoyas no longer wanted to own the property and approached Herminia to either buy out their interest or to sell the entire property in a partition action.

Herminia could not obtain a loan on her own to buy out the Montoyas. Instead, she asked Anastacio to buy out their interest to avoid having to sell the entire property through a partition action. Herminia, her attorney, Anastacio, and the Montoyas entered into a mediation. Anastacio's mortgage broker was also present and also testified at trial.

The broker explained he had been introduced to Anastacio through Herminia's attorney, and the mediation resulted in an agreement that Anastacio would secure a loan to "buy out the Montoyas interest" in the property. Herminia agreed that if Anastacio secured the loan, she would add him to the title. Anastacio, in turn, would pay the taxes, insurance, and

4

maintain the property, and Herminia would be allowed to live on the property until her death.

Before he could secure the loan, Anastacio "had to do a lot of repairs on the property" before it "would become essentially lendable." This included repairing the floors, walls, sheetrock, and the bathroom. After the property was sufficiently "rehabbed," Anastacio secured a loan for $423,000, moved into the B-side of the property, and began paying the mortgage, property taxes and insurance. He also maintained the property. "Herminia was then taken off the title completely, which resulted in Anasta[cio] holding title to the entire property."

The title company, New Century Title, prepared a grant deed transferring the property from the Montoyas and "Herminia G. Saldana, Successor Trustee of the Ross Garcia Revocable Trust dated April 14, 2000 & Restated May 17, 2001, who acquired title as Hermenia Garcia." That deed was recorded on December 8, 2005.

Herminia also executed a "gift letter" to show "that between the seller, Herminia Garcia, and the borrower, Anastacio Saldana, that there is not going to be a loan involved in it. It's just a pure gift from parent to child, adult child." "Gift letters are required by lenders when there is an intra-family transfer or funds provided to contribute to a purchase."

Two years later, in 2007, the broker helped Anastacio refinance to secure a more favorable loan on the property. The refinance was handled by First American Title. The broker explained that at the time of the refinance there were no "significant defects in the title set out in th[e] preliminary title report" and the report was "consistent with the preliminary title report that [he] sought from New Century Title." At the time, he was "fairly confident that Anastacio had a hundred percent fee title in his name."

Over the years, Anastacio mostly lived in the B-portion side of the property, although he would sometimes move in with Herminia in the A-portion side, when "she felt alone," and he continued to make repairs, maintain the property, and pay the mortgage, taxes and insurance on the property.

Herminia's sister testified that Herminia had told her Anastacio owned her half and that Herminia "was happy" about it.

Appellant also testified. He maintained Herminia wanted to give Anastacio only the B-portion of the property and did not want him "to have ownership of the entire property." Much of appellant's testimony concerned "how Herminia was treated by her children." The only other witness appellant called on his behalf was his wife who stated Herminia told her "Anastacio had his portion, and the other half was for the other children to divide."

After trial, the court issued a ruling finding, "on the evidence presented," the "2005 transaction was valid and legally conferred upon Anastacio full title to both the 'A' and 'B' parcels of 735 Casa Grande Road," and that "Anastacio shall have Quiet Title to the property, and the Deed shall be reformed to establish that fact in the recording."

Specifically, the court found the Montoyas met with Herminia, Anastacio, Herminia's attorney, a mortgage broker, and a mediator and "worked out an agreement whereby Anastacio would obtain a loan to buy out the Montoya's one-half interest, and Herminia . . . would transfer her (i.e., the trust's) half to Anastacio. Herminia would have the home to live in for the rest of her days and Anastacio would pay the taxes, insurance, and upkeep of the property."

However, when New Century Title, which is no longer in business, prepared the grant deed it did so from the Montoyas and "Herminia G. Saldana, Successor Trustee, of the Ross Garcia Revocable Trust dated April 14, 2000 & Restated May 17, 2001, who acquired title as Hermenia Garcia." The court determined this deed "should properly have designated Herminia Garcia as Trustee of the Herminia Garcia Revocable Living Trust" instead of the "Ross Garcia Revocable Trust." This error constituted a breach of the implied covenant against encumbrances because "when Herminia . . . transferred her one-half interest to Anastacio at law she covenanted that she had not previously conveyed the property to any entity, which she had. While erroneous insertion of the name of the earlier trust was an error by New Century Title, [Civil Code] section 1113 imposes a warranty on Herminia that she had not made the subsequent conveyance to a very similar trust over which she had complete control as the trustee, and the warranty affixes to her transfer of the property." Other than making this finding, the court did not explain why it was significant or rely on it in ordering reformation of the deed.

Rather, the court focused on the operative principles of reformation, stating where the "acts are sufficiently clear to show that both parties shared a common understanding of a land transaction, but were mutually mistaken as to some detail of the written instrument, courts will grant reformation." "When the parties have agreed to the terms of the contract [conveying an interest in property], an instrument such as a deed will generally be executed in order to carry out the intent of the parties to the contract. If, through mistake in preparation, the instrument fails to carry out that intent, equity will reform the instrument in order to implement the contract." The court found "Anastacio and Herminia . . . relied upon the title company to properly

effectuate the purchase and transfer of title" and the "[m]istake by a joint representative is a proper basis for reformation."

The court entered judgment accordingly and reformed the deed and quieted title.[7]

**DISCUSSION**

*Substantial Evidence Challenge*

Civil Code section 3399 provides a contract may be revised when, through mutual mistake of the parties, the written contract does not truly express the intention of the parties.[8] (*Martinelli v. Gabriel* (1951) 103 Cal.App.2d 818, 823.) "A mistake by the scrivener or draftsman in reducing the intent of the parties to writing is ground for reformation. . . . [¶] . . . [¶] In order to reform a written instrument the plaintiff must prove the mutual mistake by clear and convincing evidence . . . [at trial]." (*California Pac. Title Co. v. Moore* (1964) 229 Cal.App.2d 114, 116 (*Moore*).)

We review a "finding that a fact has been proved by clear and convincing evidence, an intermediate standard of proof," to determine " 'whether the record as a whole contains substantial evidence from which a

---

[7] We note appellant filed his September 9, 2021, notice of appeal after the court's July 27 ruling but before the court entered judgment on October 19. His notice of appeal was therefore premature. However, a "reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered its judgment, as filed immediately after entry of judgment." (Cal. Rules of Court, rule 8.104(d)(2).) We do so here.

[8] Civil Code section 3399 states: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

8

reasonable fact finder could have found it highly probable that the fact was true.' " (*People v. Ramirez* (2022) 14 Cal.5th 176, 181, quoting *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996; see *Moore, supra*, 229 Cal.App.2d at p. 117 [judgment reforming a written instrument "will not be upset if there is substantial evidence to support it"].)

Anastacio maintains appellant has waived any substantial evidence challenge because, in his opening brief, appellant did not set forth all of the relevant evidence and, instead, focused only on the evidence supporting his view of the case. "On appeal challenging sufficiency of the evidence, appellant's opening brief must set forth all the material evidence on point, not merely state facts favorable to appellant. [Citation.] The burden to provide a fair summary of the evidence grows with the complexity of the record. [Citation.] When appellant's opening brief states only favorable facts, ignoring evidence favorable to respondent, the appellate court may treat the substantial evidence issues as waived and presume the record contains evidence to sustain every finding of fact." (*LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1061.)

Anastacio contends that, among other things, appellant did not recount that Herminia "was at all times during the transfer transaction represented by an attorney," that she "executed a gift letter gifting her half" of the Casa Grande property to Anastacio, that that letter "was prepared by [an] attorney" "or possibly Herminia herself," and that Herminia's sister testified at trial that she "was aware" that Herminia "transferred her interest in the property to Anastacio."

It is true appellant's opening brief is deficient in these respects, and we could therefore conclude he has waived any challenge to the reformation

9

judgment. However, even assuming appellant's briefing was adequate, he has not shown that no substantial evidence supports the judgment.

Appellant claims the evidence was "insufficient to prove by clear and convincing evidence that the parties to the November 4, 2005 deed shared a common understanding of the transaction but were mutually mistaken as to some detail of the written instrument." (Capitalization omitted.)

The trial court found the parties mutually agreed that Anastacio would buy out the Montoyas to avoid a partition action. In exchange for that and Anastacio's agreement to pay taxes, insurance, and the mortgage, and to maintain the property, Herminia would add him onto the title, and she would be allowed to live on the property until her death. To effectuate this agreement, the title company prepared a grant deed. However, unbeknownst to the parties, the title company committed a scrivener's error by failing "to properly effectuate the purchase and transfer of title," namely by incorrectly designating as from "Herminia G. Saldana, Successor Trustee of the Ross Garcia Revocable Trust" instead of "Herminia Garcia as Trustee of the Herminia Garcia Revocable Living Trust."

The testimony of Anastacio, his aunt, and the broker, which we have recited, all support the court's findings. The "gift letter" provides additional credence to their testimony and additional support for the court's findings.

Appellant complains "there is ample evidence that contradicts the Trial Court's finding as to the intent of the parties." "First," according to appellant, "there is gross inadequacy of consideration in that Herminia gained nothing by way of conveying her purported 50% interest that she did not already have, which raises further doubt as to why she would enter into such an agreement." However, the trial court found Herminia could not qualify for a loan to acquire the B-portion on her own and she wanted to

acquire this portion "instead of being required to sell the entire property by way of a partition action." Anastacio agreed to secure the funds to preserve the property and ensure Herminia could continue to live there. He also agreed to pay all the property expenses and maintain the property. This was certainly not grossly inadequate consideration.[9]

Next, appellant contends that "[a]t best," Herminia wanted to "share title of the entire property with [Anastacio] and maintain her 50% interest in the property." In this regard, appellant points to the attempted 2015 conveyance of the A-portion to "an irrevocable trust" for Herminia that did not include Anastacio as a beneficiary and to Anastacio's own testimony that Herminia added him to the title to avoid a partition action. According to appellant, Herminia's 2015 action, and the reason she made the 2005 conveyance, "lend themselves to the notion that Herminia always intended to retain her proportionate interest in the property."

However, that is not the only inference that can be drawn from the sequence of events. As the trial court pointed out, Herminia appears to have revisited the title in 2015 on the then "advice of counsel" that the 2005 transfer "was not . . . valid." And whatever Herminia's intent may have been

---

[9] For the first time in his reply brief, appellant contends Anastacio "has not provided any facts as to whom paid the mortgage, taxes, or insurance on the property in order to support his claim that Herminia lived at the property free of expenses." We do not consider arguments raised for the first time in a reply brief without a showing of good cause, which plaintiff does not make here. (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 (*Shade Foods*); accord, *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 255 (*Silveria*) [" ' "[i]t is axiomatic that arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party" ' "].) In any case, Anastacio testified he paid the annual property taxes, which were approximately $5,000, the mortgage, and insurance costs beginning in 2005.

in 2015, it does not mean that in 2005 she did not intend to convey title to the entire property to Anastacio in exchange for his taking out a mortgage to prevent the property from being sold and ensuring she could continue to reside on the property, and for agreeing to take on all the costs of owning and maintaining the property. As we have recited, there is abundant evidence supporting the trial court's finding that at that time—in 2005—Herminia intended that Anastacio take title to the property.

"In the classic reformation case a contract is formed, but a provision of the writing that is executed, through mistake such as a scrivener's error, contradicts the terms to which the parties agreed. In such a case, upon evidence of the actual agreement a court is empowered to correct the error by striking the mistaken language in the instrument and inserting appropriate language." (*Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576, 593, abrogated on other grounds as stated in *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376–377.)

The evidence here amply supports the trial court's finding that the 2005 grant deed contained a mistake of fact that justified reformation.

### Implied Covenant

As we have recited, the trial court ruled that the error in the 2005 deed by the title company constituted a breach by Herminia of implied warranty under Civil Code section 1113.[10]

In his opening brief, appellant makes no mention of the trial court's implied covenant ruling. This is understandable since the court did not

---

[10] Civil Code section 1113 states: "From the use of the word 'grant' in any conveyance by which an estate of inheritance or fee simple is to be passed, the following covenants, and none other, on the part of the grantor for himself and his heirs to the grantee, his heirs, and assigns, are implied, unless restrained by express terms contained in such conveyance: [¶] 1. That

attach any particular legal significance to this finding, which it apparently made because Anastacio raised the statute in his trial brief, implicitly (but not expressly) urging that Herminia's breach was another ground for reformation. Rather, the court went on to base its judgment on basic reformation principles and its factual findings as to the parties' intent in 2005. In the latter regard, the court relied on the documents and testimony of witnesses Anastacio presented at trial, which, as we have recited, provide ample support for the court's findings.

In his reply brief, appellant asserts "[t]his matter does not concern a prior encumbrance on the property, and therefore Civil Code section 1113 is not applicable as alleged by Respondent," i.e., as a "separate reason for reforming the deed." We will not, however, consider this belatedly raised argument. (See *Silveria, supra,* 10 Cal.5th at p. 255; *Shade Foods, supra,* 78 Cal.App.4th at p. 894, fn. 10.) In any case, as we have discussed, the trial court did not rule that section 1113 was a "separate" ground for reformation.

### DISPOSITION

The judgment is AFFIRMED. Respondent to recover costs on appeal.

---

previous to the time of the execution of such conveyance, the grantor has not conveyed the same estate, or any right, title, or interest therein, to any person other than the grantee; [¶] 2. That such estate is at the time of the execution of such conveyance free from incumbrances done, made, or suffered by the grantor, or any person claiming under him. [¶] Such covenants may be sued upon in the same manner as if they had been expressly inserted in the conveyance."

                                        _____
                                        Banke, J.

We concur:

_____
Humes, P.J.

_____
Swope, J.*

**Judge of the San Mateo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A163556, Saldana v. Saldana